JONATHAN M. JACOBSON (NYS Bar No. 1350495)
jjacobson@wsgr.com
WENDY H. WASZMER (admitted *pro hac vice*)
wwaszmer@wsgr.com
DANIEL P. WEICK (admitted *pro hac vice*)
dweick@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

LISA A. DAVIS, State Bar No. 179854
ldavis@wsgr.com
RYAN T. O'HOLLAREN, State Bar No. 316478
rohollaren@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

*Attorneys for Defendant Symantec Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NSS LABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CROWDSTRIKE, INC., SYMANTEC CORPORATION, ESET, LLC, AND ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC., AND DOES 1-50,<br><br>Defendants. | CASE NO.: 5:18-cv-05711 (BLF)<br><br>**DEFENDANT SYMANTEC CORPORATION'S MOTION TO DISMISS**<br><br>Date: February 7, 2019<br>Time: 9:00 AM<br>Location: San Jose Courthouse<br>         Courtroom 3<br><br>The Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

RELIEF SOUGHT ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................... 2

I. INTRODUCTION ............................................................................................................ 3

II. FACTS .............................................................................................................................. 4

III. ARGUMENT .................................................................................................................... 6

    A. Legal Standards ................................................................................................... 6

    B. NSS Fails to Allege a Per Se Claim .................................................................... 7

    C. NSS Fails to State a Rule of Reason Claim ....................................................... 12

    D. NSS's Cartwright Act Claims Should Also be Dismissed ................................. 14

IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
 486 U.S. 492 (1988) ...................................................................................................................7

*Analogix Semiconductor, Inc. v. Silicon Image, Inc.*,
 No. C 08-2917 JF PVT,
 2008 WL 8096149 (N.D. Cal. Oct. 28, 2008) ..........................................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................6, 13

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
 No. 15-cv-01416-BLF,
 2016 WL 3880989 (N.D. Cal. July 18, 2016) ..........................................................................9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................................6

*Broad. Music, Inc. v. CBS*,
 441 U.S. 1 (1979) ....................................................................................................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977) ................................................................................................................14

*Chapman v. N.Y. State Div. for Youth*,
 546 F.3d 230 (2d Cir. 2008) ...................................................................................................13

*Comedy III Prods., Inc. v. New Line Cinema*,
 200 F.3d 593 (9th Cir. 2000) ..................................................................................................14

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
 846 F.2d 284 (5th Cir. 1988) ....................................................................................................7

*Copperweld Corp. v. Independence Tube Corp.*,
 467 U.S. 752 (1984) ................................................................................................................10

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
 363 F.3d 761 (8th Cir. 2004) ....................................................................................................8

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*,
 236 F.3d 1148 (9th Cir. 2001) ..................................................................................................6

*Eliason Corp. v. Nat'l Sanitation Found.*,
 614 F.2d 126 (6th Cir. 1980) ....................................................................................................7

*In re Interest Rate Swaps Antitrust Litig.*,
   Nos. 16-MD-2704 (PAE), 16-MC-2704 (PAE),
   2018 WL 2332069 (S.D.N.Y. May 23, 2018)......................................................................8

*In re Polygram Holding, Inc.*,
   136 F.T.C. 310 (2003),
   *aff'd*, 416 F.3d 29 (D.C. Cir. 2005).................................................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
   206 F. Supp. 3d 1033 (E.D. Pa. 2016) ..............................................................................8

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010).......................................................................................12

*Mesirow v. Pepperidge Farm Inc.*,
   703 F.2d 339 (9th Cir. 1983)...........................................................................................11

*Mularkey v. Holsum Bakery Inc.*,
   146 F.3d 1064 (9th Cir. 1998).........................................................................................11

*Northwest Wholesale Stationers, Inc. v. Pacific. Stationery and Printing Co.*,
   472 U.S. 284 (1985) .....................................................................................................7, 8

*NYNEX Corp. v. Discon, Inc.*,
   525 U.S. 128 (1998) .......................................................................................................11

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ................................................................................6, 7, 10, 12

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
   585 F.2d 821 (7th Cir. 1978)...........................................................................................11

*Paladin Assocs., Inc. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003).......................................................................................8, 9

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997)............................................................................................13

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F. 3d 1421 (9th Cir. 1995)..........................................................................................13

*Rick-Mik Enters. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008)...........................................................................................13

*Somers v. Apple, Inc.*,
   No. C 07-06507 JW,
   2011 WL 2690465 (N.D. Cal. Jun. 27, 2011),
   *aff'd on other issues*, 729 F.3d 953 (9th Cir. 2013) ........................................................14

*State Oil Co. v. Khan*,
 522 U.S. 3 (1997) ..................................................................................................................6

*Summit Media LLC v. City of Los Angeles*,
 530 F. Supp. 2d 1084 (C.D. Cal. 2008)..................................................................................8

*Tanaka v. USC*,
 252 F.3d 1059 (9th Cir. 2001)........................................................................................12, 13

*Universal Grading Serv. v. eBay, Inc.*,
 No. C-09-2755 RMW,
 2011 WL 846060 (N.D. Cal. Mar. 8, 2011),
 *aff'd*, 563 F. App'x 571 (9th Cir. 2014) ......................................................................8, 9, 10

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
 588 F.3d 659 (9th Cir. 2009) .................................................................................................6

**STATUTES**

Cartwright Act,
 Cal. Bus. & Prof. Code § 16700 *et seq* .......................................................................3, 6, 14

Sherman Act, Section 1,
 15 U.S.C. § 1 ................................................................................................................ *passim*

Standards Development Organization Advancement Act of 2004,
 15 U.S.C. § 4301 *et seq* ............................................................................................... *passim*

**RULE**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. *passim*

**TREATISE**

ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS
 (8th ed. 2017)........................................................................................................................13

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on February 7, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, at 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, Defendant Symantec Corporation ("Symantec"), will, and hereby does, move the Court for an order dismissing Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the pleadings on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

## RELIEF SOUGHT

Symantec seeks dismissal of each claim asserted in Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff's per se claims under Sherman Act Section 1 should be dismissed given (a) the case law precluding per se liability for standard-setting activities like those alleged in the Complaint, and (b) the mandatory rule of reason requirement for standards organizations under the Standards Development Organization Advancement Act of 2004.

2. Whether Plaintiff's rule of reason claims under Sherman Act Section 1 should be dismissed given Plaintiff's failure adequately to define a relevant market, to plead any facts giving rise to an inference of market power, or to allege cognizable harm to competition.

3. Whether Plaintiff's Cartwright Act claim should be dismissed for the same reasons as its Sherman Act claims.

## I. INTRODUCTION

This is, at bottom, a case where one company's thirst for profits has led it to brush aside the needs of its customers for more accurate testing of their computer security in order to support an opaque, inaccurate, and less-than-honest business model. This Court should not permit itself to be roped into NSS's attempt to avoid transparency and fairness in anti-malware testing; instead, because its claims are entirely devoid of merit, the Court should dismiss NSS's Complaint.

In the first place, NSS incorrectly asserts claims under antitrust's per se rule, which defines certain narrow classes of business conduct as inherently unlawful under the Sherman Act (and California's Cartwright Act, which is identical to the federal Sherman Act in all respects relevant to this motion). The business activities NSS attacks, however, are standards development activities that almost never fall under the per se rule. In fact, the Standards Development Organization Advancement Act ("SDOAA") precludes any claim of per se liability as to activities of the standard-setting organization, Defendant the Anti-Malware Testing Standards Organization ("AMTSO"); and antitrust case law more broadly makes clear that where, as here, the standard at issue is supported by plausible efficiency justifications, the per se rule cannot apply. NSS's per se claims are therefore without merit as a matter of law and should be dismissed.

Lacking support for a finding of per se unlawfulness, NSS must make its case under the antitrust rule of reason, which requires a comprehensive analysis of the impact of a challenged restraint on the relevant market. NSS fails to plead facts concerning two essential elements: the definition of the relevant markets and Defendants' market power within the alleged markets. NSS offers threadbare assertions that four relevant markets exist, but it offers no facts whatsoever to define those markets beyond its bare say-so. It equally provides nothing about Defendants' market power. Given those defects, the Complaint utterly fails to state a rule of reason claim. All of NSS's claims are therefore subject to dismissal.

## II. FACTS

***Industry Background***. Cybersecurity products are a well-known and important feature of modern life. Compl. ¶ 26. Any information maintained and stored electronically is potentially subject to hacking, unauthorized access, infection with malware, or any number of other security risks, and a variety of companies have come to specialize in providing security solutions to both individuals and enterprises. *Id*. ¶¶ 25-28. This includes what NSS categorizes as Endpoint Protection ("EPP") and Advanced Endpoint Protection ("AEP") products that protect "endpoint" devices like laptops, personal computers, smart phones, and tablets. *Id*. ¶¶ 27-28. Various companies have developed businesses around testing the efficacy of EPP and AEP products. *Id*. ¶¶ 37, 40.

NSS is one of the companies providing testing services for security products. *Id.* ¶ 15. It performs what it calls "private" and "public" tests. *Id.* ¶¶ 37-41. A private test is one where the security vendor retains and pays NSS to test its products only, reporting the results only to the vendor. *Id.* ¶ 40. A public test is one in which NSS tests several different cybersecurity products, "and then distributes a report containing the results of the testing to paying customers." *Id.* ¶ 37. In private tests, NSS works with the vendors to identify the types of threats being tested so that their security products can be configured correctly to address them and to see if the products, properly configured, work as intended. *Id.* ¶ 40. In public tests, in contrast, NSS "does not let [vendors] know how its tests will be performed or to what malware or what inputs that are not malware their products will be subjected." *Id.* ¶ 99. When NSS does a public test, it sometimes does not even inform the vendors that their products are being tested. *Id.* ¶ 76.

As its Complaint points out, "many cybersecurity product vendors realized that they could avoid poor [NSS] public test results by subjecting their products to [NSS's] private testing before they were released so security defects could be identified and fixed before product release and public testing." *Id.* ¶ 40. Accordingly, as the Complaint makes clear, to do well in an NSS public test, it is important to pay NSS first for a private test. That is its business model.

***AMTSO.*** AMTSO is a standards development organization "founded in 2008 to improve the business conditions related to the development, use, testing and rating of anti-malware

products and solutions." Compl. ¶ 52. Following an extended period of dialogue involving multiple stakeholders and a vote of the membership (including NSS), AMTSO adopted a Testing Protocol Standard for the Testing of Anti-Malware Solutions ("Testing Protocol Standard") in May 2018. *Id.* ¶ 75 & Ex. A. The purpose of the Testing Protocol Standard "is to help improve the transparency and fairness of Anti-Malware Tests that are made publicly available." *Id.* Ex. A at 6, § 1.2. The premise is that test results are more accurate, provide useful information, and avoid both false positives and false negatives, when both the tester and the vendor are aware of what is being tested. To achieve this goal, the Testing Protocol Standard establishes a system for notice to AMTSO, the target vendor, and the public of anti-malware testing plans and standards for the conduct of all participants in the testing process. *Id*. at 9-22. While AMTSO can certify compliance with its own standard (*id*. at 6), there is no legal requirement or other enforcement mechanism beyond market acceptance for non-adherence, and NSS concedes that it and others have refused to adhere to the standard. *See id.* ¶ 100.

***Vendor Defendants.*** Defendant Symantec is one of the world's leading cybersecurity firms. Compl. ¶ 48. It is a Delaware corporation, headquartered in Mountain View, California. *Id*. ¶ 3. Defendants CrowdStrike and ESET also provide a variety of EPP and AEP products. *Id*. ¶¶ 42 & 50. According to the Complaint, various employees of each of the vendor Defendants have served on AMTSO's board of directors and in other AMTSO functions. *Id*. ¶¶ 47, 49, & 51.

***Alleged Conspiracy.*** NSS alleges that Defendants and other members of AMTSO conspired to cause AMTSO to adopt the Testing Protocol Standard and thereby undermine NSS's competitive position. *Id*. ¶¶ 64-89. As NSS tells it, various AMTSO members determined that standards for anti-malware testing would be useful and kicked off a discussion over potential standards. *Id*. ¶¶ 66-68. EPP testing vendors, including NSS, participated vigorously in the debate over the standard and made clear their various positions on the proposals. *Id*. ¶¶ 17, 69, & 87-88 & Ex. B. AMTSO held a vote on the adoption of the standard, and ultimately adopted it in May 2018. *Id*. ¶¶ 17, 18, 59-60, & 75. According to the Complaint, various AMTSO member companies—including CrowdStrike, Symantec, and ESET—have announced that they will not authorize testing of their products by testers who do not adhere to the AMTSO standard.

*Id*. ¶¶ 73-74 & 83-84. NSS alleges that these decisions, and the very existence of AMTSO, constitute violations of the Sherman Act and Cartwright Act. *Id*. ¶¶ 104-219.

**III.   ARGUMENT**

**A.   Legal Standards**

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In the antitrust context, a claim must make sense in light of basic economics. *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Sherman Act bans "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Despite the apparent sweep of that language, the Supreme Court "has long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "Some types of restraints . . . have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful per se." *Id*. However, "most antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id*.; *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2283-84 (2018).

California's antitrust statute, the Cartwright Act, is identical in its scope and prohibitions in all respects relevant to the instant motion. *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*., was modeled after the Sherman Act.").

Although the Complaint has 10 separate counts, there are really just two claims: One for a per se illegal group boycott under the Sherman and Cartwright Acts, the other for the same conduct but analyzed under the rule of reason. *See generally American Express*, 138 S. Ct. at 2283-84 (explaining distinction between per se illegality and treatment under the "rule of reason"). Neither set of claims can survive this motion. *First*, the case law, together with the Standards Development Organization Advancement Act of 2004 (SDOAA), precludes application of the per se rule to Defendants' alleged activities. *Second*, NSS fails to even begin to meet the pleading standards for a rule of reason claim, failing to allege any facts as to the relevant markets and market power. The Complaint should be dismissed in its entirety.

### B. NSS Fails to Allege a Per Se Claim

***Governing Case Law Precludes Application of the Per Se Rule.*** NSS relies on a contention of per se illegality. The per se rule, however, has only limited application to group boycotts. As the Supreme Court explained in *Northwest Wholesale Stationers, Inc. v. Pacific. Stationery and Printing Co.*, 472 U.S. 284 (1985): "Rule-of-reason analysis guides the inquiry, unless the challenged action falls into the category of 'agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable[.]'" *Id.* at 289 (citation omitted). In the standard-setting context, the per se rule is especially limited in scope. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 (1988) ("It is this potential for procompetitive benefits that has led most lower courts to apply rule-of-reason analysis to product standard-setting by private associations."); *Analogix Semiconductor, Inc. v. Silicon Image, Inc.*, No. C 08-2917 JF PVT, 2008 WL 8096149, at *4 (N.D. Cal. Oct. 28, 2008) ("SSO's are not illegal per se and often create a net pro-competitive effect. Accordingly, any alleged agreement among the members of a SSO is analyzed under a rule of reason.") (citation omitted); *accord, e.g.*, *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 290-92 (5th Cir. 1988); *Eliason Corp. v. Nat'l Sanitation Found.*, 614 F.2d 126, 129-30 (6th Cir. 1980).

Nothing in NSS's Complaint reflects the traditional circumstances where courts apply the per se rule against group boycotts. As the Court said in *Northwest Wholesale Stationers*, the per

se rule is generally limited to cases where "the boycott . . . cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete," where "the boycotting firms possessed a dominant position in the relevant market," and where "the practices were generally not justified by plausible arguments that they were intended to enhance overall efficiency and make markets more competitive." 472 U.S. at 294 *see also id.* at 298 ("The mere allegation of a concerted refusal to deal does not suffice [to justify application of the per se rule] because not all concerted refusals to deal are predominantly anticompetitive.").

Per se analysis is inapplicable here because the AMTSO standard is amply supported by a plausible efficiency justification appearing on the face of the Complaint and the documents incorporated by reference. *See Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008) ("[D]ocuments attached to the complaint and incorporated by reference are treated as part of the complaint, not extrinsic evidence[.]"). The presence of such a justification precludes application of the per se rule. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003); *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2011 WL 846060, at *1 (N.D. Cal. Mar. 8, 2011) (discussed below), *aff'd*, 563 F. App'x 571 (9th Cir. 2014); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004) ("Because the alleged restraints were arguably based, at least in part, on safety concerns, they may have had some procompetitive effects. It follows that an abbreviated per se analysis was inappropriate."); *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1044-48 (E.D. Pa. 2016) ("[T]he plausible presence of certain procompetitive aspects of the [standard-setting] conspiracy, which have been highlighted by the defendants, renders it necessary and appropriate to evaluate the plaintiffs' claims under the rule of reason."); *In re Interest Rate Swaps Antitrust Litig.*, Nos. 16-MD-2704 (PAE), 16-MC-2704 (PAE), 2018 WL 2332069, at *16 (S.D.N.Y. May 23, 2018) ("The facts pled reveal potential pro-competitive justifications . . ., enough to persuade the Court that the conduct alleged . . . is not by nature suitable to condemnation per se.").

Exhibit A to the Complaint notes that the Testing Protocol Standard "is based on a premise that although testers and vendors must retain their independence, anti-malware testing is

more likely to be transparent and [f]air if there is communication between the parties regarding the solution being tested, and the testing methodology." Compl. Ex. A at 3. This is because "opaque or unfair testing can create misleading results and leave corporations and consumers with inadequate protection that risks both their privacy and security"; it can also cause "unnecessary expense for vendors" that draws resources away from pro-competitive research and development activities. *Id*. Complaint exhibits reflecting the AMTSO membership's reasons for approving the standard sound similar themes. *Id.* Ex. D at 1 ("Bad testing hurts all of us, and most specifically the end user."); *id*. at 2 (standard will "prevent many of the spurious accusations that only serve to hurt the industry's reputation"); *id.* Ex. E at 2 ("After significant effort from our members and participants, we believe the Standard, and the related openness and transparency we advocate, should lead to better testing, better products, and a more secure world."). This goal of "improv[ing] the transparency and fairness of Anti-Malware tests" (*id.* Ex. A at 6, § 1.2) is manifestly procompetitive.

Of course, as its Complaint argues at length, NSS claims to disagree with the justifications AMTSO and its members have advanced for the standard – and its factual allegations must be taken as true as this stage. The question now, however, is simply whether Defendants' justification arguments are *plausible*, not whether NSS agrees or whether there is a factual dispute. *See Paladin Assocs.*, 328 F.3d at 1155 (per se rule inapplicable where arguments that conduct was procompetitive were plausible); *In re Polygram Holding, Inc.*, 136 F.T.C. 310, 347 (2003) ("A justification is plausible if it cannot be rejected without extensive factual inquiry."), *aff'd*, 416 F.3d 29 (D.C. Cir. 2005); *cf. Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, No. 15-cv-01416-BLF, 2016 WL 3880989, at *8, *13 (N.D. Cal. July 18, 2016) (12(b)(6) dismissal applying full rule of reason, not "quick look," where conduct "has plausible procompetitive effects" and "Plaintiffs have not explained how the [conduct] has no plausible procompetitive effects").

Judge Whyte's decision in *Universal Grading v. eBay* is closely on point. There, the plaintiff (engaged in the business of grading the condition and value of coins) sued eBay and two coin dealer trade associations for having formed the "Coins Community Watch Program," the

stated purpose of which was to "combat misrepresented or fraudulent listings" of coins. 2011 WL 846060, at *2. To implement the program, the defendants selected five authorized grading services and excluded others, including the plaintiff. Coin sellers on eBay could promote their coins as "certified" if certification came from one of the five services, but not if their certification came from the plaintiff or others. The plaintiff challenged the policy, arguing that the per se rule for boycotts applied because "industry insiders and market makers have used the self-regulatory process to disadvantage new rivals or new forms of competition." *Id.* at *4. Judge Whyte held otherwise. Relying on the policy documents attached to the complaint, the court concluded that the policy had "redeeming virtues oriented toward creating 'a safer online auction service platform,'" and that the per se rule therefore did not apply. *Id.* at *4-5. Even though this justification was hotly contested, it was at least plausible, and that rendered per se analysis inapplicable. The Ninth Circuit affirmed in all respects. 563 F. App'x 571 (9th Cir. 2014).

As in *Universal Grading,* NSS's Complaint clearly presents, at most, a disagreement as to what testing approaches are optimal, and the question of whether embodying one vision in a standard harms competition requires "a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s actual effect' on competition." *Am. Express*, 138 S. Ct. at 2284 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). NSS's own pleadings thus preclude application of the per se rule and require NSS to allege facts demonstrating substantial harm to competition under the rule of reason (which it has not done, *see* pp. 13-15 below).

Per se analysis is also inappropriate because NSS makes no allegation that the AMTSO standard is necessary to compete or that any firm lacked equal access to the standard and opportunity to show compliance with it. Indeed, the thrust of NSS's case is that it has willfully chosen not to comply with the standard, and has therefore lost access to EPP and AEP product vendors who prefer compliant testers. It advances no allegation that it could not comply if it wanted to. Compl. ¶ 100 ("NSS Labs has chosen to preserve its competitive advantage by not adhering to the AMTSO Testing Standard").

SYMANTEC CORPORATION'S MOTION TO DISMISS
CASE NO.: 5:18-CV-05711 (BLF)                -10-

The Complaint contains no allegations that Defendants collectively or individually have a dominant position in any relevant market. Neither is there any factual allegation suggesting that any AMTSO member lacked freedom to choose not to adhere to the standard and to allow its products to be tested in non-compliant ways. *See Broad. Music, Inc. v. CBS*, 441 U.S. 1, 23-24 (1979) (rule of reason appropriate where separate negotiations possible); *see also Mularkey v. Holsum Bakery Inc.*, 146 F.3d 1064, 1065 (9th Cir. 1998) (rule of reason where "agreement . . . did little, if anything, to restrict the actions of . . . distributors"); *Mesirow v. Pepperidge Farm Inc.*, 703 F.2d 339, 343 (9th Cir. 1983) (rule of reason where distributors were "free to solicit" other business); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 836-38 (7th Cir. 1978) (rule of reason where "[a]ny licensee was free not to participate, and to negotiate directly with the customer in an attempt to supply all or any part of the customer's needs"). In fact, there is no allegation of any enforcement mechanism that would prevent AMTSO members from deviating from the standard or otherwise coerce compliance with the alleged boycott. NSS's allegations thus fail to describe the sort of boycott that would fall under the per se rule.

In the end, Defendants are simply alleged to have exercised their discretion not to cooperate with a firm whose way of doing business conflicted with their own understanding of what will best serve their customers. Antitrust law treads cautiously when reviewing such decisions. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998) ("The freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage. . . . Thus, this Court has refused to apply per se reasoning in cases involving that kind of activity.") (citations omitted). The Complaint should therefore be dismissed to the extent that it relies on the per se rule to support its claims of liability.

***The SDOAA Also Counsels Against Application of the Per Se Rule.*** Congress has specifically legislated rule of reason—rather than per se—treatment of standards organization actions in the SDOAA. Although that statute's terms are arguably limited to SSOs (here AMTSO), rather than their members, it would be anomalous to say the least in this case to apply a different standard to AMTSO's members on identical facts.

Every count in the Complaint attacks AMTSO's standards development activities as the core of the alleged anticompetitive conduct. Compl. ¶¶ 106, 119, 132, 145, 158, 171, 183, & 193. But the SDOAA provides: "In any action under the antitrust laws, or under any State law similar to the antitrust laws, the conduct of . . . a standards development organization while engaged in a standards development activity . . . shall not be deemed illegal per se; such conduct shall be judged on the basis of its reasonableness, taking into account all relevant factors affecting competition, including, but not limited to, effects on competition in properly defined, relevant research, development, product, process, and service markets." 15 U.S.C. § 4302. By its terms, the statute thus precludes application of any rule of per se illegality to AMTSO-sponsored standards determinations, and NSS's case against AMTSO's standard therefore must be reviewed under the rule of reason.[1]

### C. NSS Fails to State a Rule of Reason Claim

The rule of reason requires proof of a substantial anticompetitive effect in the market as a whole. *Am. Express*, 138 S. Ct. at 2284. To meet that requirement, a complaint must allege (among other things) both a relevant market and the defendants' market power within that market. *Id.* NSS alleges neither.

*No relevant market.* "[T]he term 'relevant market' encompasses notions of geography as well as product use, quality, and description. The geographic market extends to the area of effective competition . . . where buyers can turn for alternative sources of supply. The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Tanaka v. USC*, 252 F.3d 1059, 1063 (9th Cir. 2001) (citations omitted). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Id.*; *see also Am. Express,* 138 S. Ct. at 2285-90 (reversing judgment for failure to prove relevant market or market power); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th

---

[1] Although § 4302 arguably applies only to AMTSO, *see* 15 U.S.C. § 4301(a)(8), the same result on the facts here should also apply to AMTSO's members. AMTSO cannot act without an affirmative vote of its members. To say that a vote for a standard entails rule of reason treatment for the organization but not for those who engaged in the voting makes no sense.

Cir. 2010) (dismissing complaint offering only "skimpy allegations" as to relevant market); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). As a leading treatise explains, motions to dismiss for failure to allege sufficiently a relevant market "should be granted where the complaint 'fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in the plaintiff's favor.'" ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 627 (8th ed. 2017) (quoting *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008)).

NSS asserts four relevant markets: a "national market for EPP products," a "national market for AEP products," a "national market for EPP product testing services," and a "national market for AEP product testing services[.]" Compl. ¶¶ 90-94. The allegations are entirely conclusory. NSS alleges no facts at all bearing on the existence or non-existence of reasonable substitutes or cross-elasticity of demand, nor on the geographic range of effective competition. Merely asserting a conclusion, as NSS has done, does not suffice. *Iqbal*, 556 U.S. at 678. Indeed, NSS's allegations are even more threadbare than those found subject to dismissal in *Tanaka*, where the plaintiff at least defined the relevant geographic and product markets with reference to some party's economic preferences (her own), but still saw her claims dismissed. 252 F.3d at 1064. By contrast, NSS offers no allegations whatsoever about what economic realities support its proposed market definitions. NSS's Complaint thus represents an even less substantial pleading than *Tanaka* or other cases where courts have found antitrust complaints lacking, and should therefore be dismissed for failure to define the relevant market.

***No market power.*** The lack of any allegation of market power is even more glaring. A firm has market power when it has the ability "unilaterally to raise prices above competitive level" and "by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F. 3d 1421, 1434 (9th Cir. 1995). "A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enters. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008).

The Complaint contains no allegations that defendants as a group or as individuals have market power. In fact, the issue is not addressed even once in the Complaint, and the phrase "market power" is nowhere to be found. The Complaint makes no allegations regarding market shares, supracompetitive pricing, restricted output, or any other indicator of market power. It is therefore subject to dismissal on this further ground as well.

***No harm to competition.*** The Complaint also fails to allege a coherent theory as to how *competition*, rather than NSS, has been harmed in any relevant market. Antitrust law protects competition, not individual competitors such as NSS. *E.g., Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). The fact that NSS has a business model that does not conform to AMSTO's standard is, at most, harm to NSS, not to competition in a relevant market.

Importantly, moreover, Symantec's election to spend its private testing dollars with testing companies that abide by the AMTSO standard, which Symantec believes is better for consumers (Compl. Exh. D), does not prevent NSS from conducting its public tests, and nothing in the Complaint suggests that NSS cannot include Symantec products in its public tests even without Symantec's consent. Nor is there anything to prevent NSS from conforming to the AMTSO standard if it wants to. Given those facts, it is difficult to see how competition could have been harmed in any way even if NSS had alleged a relevant market or market power.

### D. NSS's Cartwright Act Claims Should Also be Dismissed

Because NSS's federal claims serve as the basis for its state law claims, the state law claims should also be dismissed on the merits. *See, e.g.*, *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000) (affirming dismissal of supplemental state claims where common defect was "fatal to all of [the plaintiff's] claims"); *Somers v. Apple, Inc.*, No. C 07-06507 JW, 2011 WL 2690465, at *7 (N.D. Cal. Jun. 27, 2011) (dismissing state law claims on the merits where federal antitrust claims were insufficient and served as the basis for plaintiff's state law claims), *aff'd on other issues*, 729 F.3d 953 (9th Cir. 2013).

## IV. CONCLUSION

For the foregoing reasons, Symantec's motion to dismiss should be granted in all respects and the Complaint should be dismissed in its entirety.

Dated: November 26, 2018

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Jonathan M. Jacobson

Jonathan M. Jacobson (NYS Bar No. 1350495)
jjacobson@wsgr.com
Wendy H. Waszmer (admitted *pro hac vice*)
wwaszmer@wsgr.com
Daniel p. Weick (admitted *pro hac vice*)
dweick@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lisa A. Davis, State Bar No. 179854
ldavis@wsgr.com
Ryan T. O'Hollaren, State Bar No. 316478
rohollaren@wsgr.com
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

*Attorneys for Defendant Symantec Corporation*