Arnold E. Brown (SBN 167679)
Email: abrown@schwabe.com
Stephen G. Sullivan (SBN 164495)
Email: ssullivan@schwabe.com
**SCHWABE, WILLIAMSON & WYATT, P.C.**
455 N. Whisman Rd., Ste. 200
Mountain View, CA 94043
Telephone: 650.396.1401
Facsimile: 650.396.1415

Brenna K. Legaard (*Admitted Pro Hac Vice*)
Email: blegaard@schwabe.com
**SCHWABE, WILLIAMSON & WYATT, P.C.**
1211 SW Fifth Avenue, Ste. 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Of Attorneys for Defendant*
*Anti-Malware Testing Standards Organization, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NSS LABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CROWDSTRIKE, INC.; SYMANTEC CORPORATION; ESET, LLC; ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC; AND DOES 1-50, INCLUSIVE,<br><br>Defendants. | CASE NO. 5:18-cv-05711-BLF<br><br>**DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS**<br><br>Date:  February 7, 2019<br>Time:  9:00 a.m.<br>Courtroom:  San Jose Courthouse Courtroom 3<br>Judge:  The Honorable Beth Labson Freeman |

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................... 1

RELIEF SOUGHT ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

STATEMENT OF THE ISSUES TO BE DECIDED ..................................................... 2

INTRODUCTION .............................................................................................................. 3

FACTUAL BACKGROUND .............................................................................................. 3

    I.     Anti-Malware Software and Public Testing ........................................ 3

    II.     AMTSO ................................................................................................. 3

    III.     The AMTSO Standard ......................................................................... 5

LEGAL STANDARD ......................................................................................................... 8

    I.     The Court Should Consider Certain Additional Documents as Either Incorporated by Reference or Subject to Judicial Notice. ................................. 9

    II.     NSS'S Per Se Claims Against AMTSO Must be Dismissed. ......................... 12

    III.     NSS has Failed to Plausibly Plead LEAD Antitrust Injury. .......................... 14

        A.     NSS has Failed to Plausibly Allege That AMTSO has Engaged in Unlawful Conduct That Injures Competition. .................................... 14

        B.     NSS has Failed to Plausibly Plead That it has Sustained Injury That Flows From Any Anticompetitive Act. ...................................... 17

THE COURT SHOULD DISMISS THE CARTRIGHT ACT CLAIMS. ............................ 19

ALTERNATIVELY, THE COURT SHOULD DISMISS THE DOE DEFENDANTS. ........ 19

CONCLUSION ..................................................................................................................... 20

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994)...........................................................................10

*Ahmadi v. Nationstar Mortg., LLC*,
No. SACV 16-0062 AG (JCGx), 2016 U.S. Dist. LEXIS 45904 (C.D. Cal.
Mar. 31, 2016)...........................................................................................15

*Alatraqchi v. Uber Techs., Inc.*,
No, C-13-03156 JSC, 2013 U.S. Dist. LEXIS 119642 (N.D. Cal. Aug. 22,
2013) ........................................................................................................16

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ...............................................................14, 17

*Analogix Semiconductor, Inc. v. Silicon Image, Inc.*,
No. C-08-2917 JF (PVT), 2008 U.S. Dist. LEXIS 118508 (N.D. Cal., October
28, 2008) ..................................................................................................19

*Apple Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) .......................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)..................................................................................14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3rd Cir. 1997) ....................................................................10

*Comedy III Prods., Inc. v. New Line Cinema*,
200 F.3d 593 (9th Cir. 2000) .....................................................................19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ......................................................................8

*Davis v. HSBC Bank*,
691 F.3d 1152 (9th Cir. 2012)................................................................9, 10

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) ........................................................11

*In re Easysaver Rewards Litig.*,
  737 F. Supp. 2d 1159 (S.D. Cal. 2010) ......................................................10

*Fisher v. Kealoha*,
  869 F. Supp. 2d 1203 (D. Haw. 2012) ...............................................19, 20

*Hernandez v. Select Portfolio Servicing Inc.*,
  No. CV 15-01896-MMM (AJWx), 2015 U.S. Dist. LEXIS 82922 (C.D. Cal.
  June 25, 2015) ...............................................................................................9

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...................................................................10

*O'Toole v. Northrop Grumman Corp.*,
  499 F.3d 1218 (10th Cir. 2007) .................................................................11

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) .....................................................................10

*Rieber v. OneWest Bank FSB*,
  No. 13-CV-2523 W JLB, 2014 U.S. Dist. LEXIS 62682 (S.D. Cal. May 6,
  2014) ..............................................................................................................9

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .....................................................................17

*Somers v. Apple, Inc.*,
  Case No. C 07-06507 JW, 2011 WL 2690465 (N.D. Cal. Jun. 27, 2011) ...........19

**Statutes**

15 U.S.C. § 4301(a)(8) ......................................................................................12

15 U.S.C. § 4302 (2) ....................................................................................12, 13

15 U.S.C. § 4304(a)(2) .......................................................................................13

**Other Authorities**

149 Cong Rec .....................................................................................................12

Fed. R. Civ. P. 8 ...................................................................................................9

Fed. R. Civ. P. 12(b)(6) ...................................................................1, 9, 10, 11

Fed. R. Evid. 201 ...............................................................................................11

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on February 7, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, at 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman, Defendant Anti-Malware Testing Standards Organization, Inc. ("AMTSO") will, and hereby does, move the Court for an order dismissing Plaintiff NSS Labs, Inc.'s ("NSS") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the pleadings on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

## RELIEF SOUGHT

AMTSO seeks dismissal of each claim asserted in Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether Plaintiff's per se claims against AMTSO should be dismissed for failure to state a claim.

2.    Whether Plaintiff's rule of reason claims against AMTSO should be dismissed for failure to state a claim.

3.    Whether Plaintiff's state law claims should be dismissed for the same reasons.

4.    Whether, in the alternative, the Doe defendants should be dismissed.

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

**INTRODUCTION**

AMTSO adopts and incorporates by reference motions to dismiss filed by defendants Symantec, Corp., (Dkt. 42), and CrowdStrike, Inc., (Dkt. 47).

Further, there are additional reasons that NSS's claims against AMTSO must be dismissed. NSS's per se claims are barred by federal statute, and it fails to plausibly allege any claim against AMTSO under the rule of reason. NSS fails to plausibly allege that it has sustained antitrust injury, and therefore cannot establish that it has standing. AMTSO is a volunteer organization that developed a voluntary standard that is procompetitive on its face. While NSS may not like that standard, it is under no obligation to follow it, and has offered no plausible argument that it has been injured by it.

**FACTUAL BACKGROUND**

**I. ANTI-MALWARE SOFTWARE AND PUBLIC TESTING**

This case concerns "endpoint protection" (EPP) and "advanced endpoint protection" (AEP) software, which is anti-malware software used by organizations such as businesses or other enterprises to protect the organization's network. The software protects organizations from harmful malware that uses "end points" (*e.g.*, user's phones, laptops, and other devices) as points of entry into the organization's network. This case also concerns "public" testing of anti-malware software products. A public test is a test performed by an independent testing lab such as Plaintiff in which a number of different software vendors' products are tested. A public test typically results in a published test report that compares the performances of competing products.

**II. AMTSO**

The Anti-Malware Testing Standards Organization ("AMTSO") is a nonprofit organization formed in 2008 by 25 companies, which represented the bulk of the cybersecurity industry at the time, including both vendors and testing labs. (Declaration of John Hawes ("Hawes Decl."), Ex. A, pp. 4-5, filed contemporaneously herewith.).[1] In forming AMTSO, the

---

[1] As explained below, AMTSO moves the Court to consider these materials as incorporated by reference into the Complaint, or, alternatively, through judicial notice.

Page 3 -   DEFENDANT ANTI-MALWARE TESTING
           STANDARDS ORGANIZATION, INC.'S
           MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

industry came together to "improve the business conditions related to the development, use, testing and rating of anti-malware products and solutions." (*Id.* at p. 1)  AMTSO is open to any individual or entity dedicated to this purpose. (*Id.*)  AMTSO "focuses on [] the global need for improvement in the objectivity, quality and relevance of anti-malware testing methodologies." (*Id.*)

NSS's Complaint suggests that the promotion of transparency and openness in anti-malware testing is somehow new.  But around ten years ago, during the first year of AMTSO's existence, AMTSO's membership created and published the first of its guideline documents, including the "Fundamental Principles of Testing," which stated that testing should be unbiased, reasonably open and transparent, and accurate.  (Ex. A, pp. 4-6; Ex. B, pp. 1-7.)  AMTSO's Fundamental Principles called for the disclosure of conflicts of interest, the publication of test methodology, and communication between testers and vendors.  (Ex. B, pp. 1-7.)

Beyond the promotion of better communication and more transparent interactions, AMTSO has worked generally to improve anti-malware testing.  AMTSO's members collaborated to define "dynamic" and "whole product" testing, describing test methods that provide a more holistic picture of all relevant product capabilities using a test set that correlates with the real threats facing users.  (Ex. A, pp. 4-6; Ex. B, pp. 8-23.)

To provide testers with samples of real threats facing users in real time, AMTSO created and manages, maintains, and secures a Real-Time Threat List. (Ex. A, pp. 7-8.)  The Real-Time Threat List ("RTTL") is a repository of malware collected by and available to all AMTSO members.  Through the RTTL, AMTSO members share malware that they consider to be of value in testing.  In addition to the malware itself, the RTTL allows a wide range of metadata to be collected and stored alongside samples and URLs, so that testers can develop and refine test sample sets.  *Id.*

AMTSO also created, hosts, and offers a number of tools that can be used to ensure that endpoint security products are configured properly. (Ex. A, p. 9.)  AMTSO plans to expand these tools in the future to cover more features and operating systems.  (Ex. A, pp. 4-6.)

Page 4 -    DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

While vendors do numerically outnumber testers in the marketplace and in the AMTSO membership, testers were co-founders of AMTSO, and hold positions of influence within the organization. The current Chairman of the Board of Directors, Simon Edwards of SE Labs, is a tester, and the immediate past Chairman, John Hawes, was at Virus Bulletin, a tester, at the time he was Chairman. (Ex. A, pp. 16, 13.) A co-founder of AV-Comparatives, a tester and a founding member of AMTSO, is a current member of the Board of Directors. (*Id*, p. 17.) AMTSO's President and CEO, Dennis Batchelder, is the CEO of AppEsteem, a certifier that sometimes conducts testing. (*Id*, p. 13.)

## III. THE AMTSO STANDARD

In 2016, AMTSO began developing a communication protocol that testers and vendors could follow to achieve better transparency in public anti-malware testing (the "Standard"). (Ex. A, p. 20.) AMTSO will certify tests that are performed in accordance with the Standard. Compl., Ex. A at 10.5. Because the Standard applies to tests, not to testers or vendors, testers are free to conduct both tests that follow the Standard and tests that do not. *Id.*

The Standard was developed by a Standards Working Group ("SWG") which included representatives of both testers and vendors. Specifically, the SWG included two representatives of tester AV-Comparatives, and representatives of testers NSS Labs, SE Labs, and Virus Bulletin.[2] Compl., Ex. A at p. 5. The entire membership of AMTSO, including all testers, provided regular review and feedback during the two years during which the Standard was developed. (Ex. A, pp. 20-23.)

After the draft Standard was developed, AMTSO's membership approved public pilot testing under the Standard in order to observe and better understand the Standard in practice. (Ex. A, p. 5.) In order to further ensure that dissenting viewpoints were included in the process, AV-Comparatives, whose founders were members of the SWG, who have expressed skepticism

---

[2] John Hawes, current Chief Operating Officer of AMTSO, was the Chief of Operations at tester Virus Bulletin until March of 2017.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

about the Standard and ultimately voted against the Standard, performed the public pilot test. (Ex. B, pp. 24-31.)

Following public pilot testing, further discussions, further input from AMTSO members, and further amendments, the Standard was adopted in May, 2018. (Ex. A, pp. 24-26.) It was then amended in October, 2018 in response to comments and suggestions from AMTSO members. (Ex. D.) The AMTSO standard is subject to ongoing review, and AMTSO expects to update it regularly. A Standards Change Request Form is available for anyone interested in security testing, both within and outside the AMTSO membership to submit suggestions or recommendations to the SWG. (Ex. A, pp. 27-30.)

The Standard emphasizes transparency and cooperation between testers and vendors. (Ex. A, pp. 20-23.) In order to conduct a public test in accordance with the Standard, testers must provide notification to all vendors whose products will be tested, Compl., Ex. A at 4.1, and either provide or publish a test plan in advance of the test which includes basic information about the test including the types of products intended to be included, Compl., Ex. A at 6.1.2, a date or date range within which the test will commence, Compl., Ex. A at 6.1.4., the test methodology, Compl., Ex. A at 6.1.6, an overview of the scoring and certification plan, Compl., Ex. A at 6.1.8, instructions regarding how the test's results can be disputed, Compl., Ex. A at 6.1.9, and "a reasonable amount of information on sample provenance and sample collection strategy," Compl., Ex. A at 6.1.11. The Standard does not require vendors to participate in any given test, but encourages vendor cooperation by providing that if a vendor cooperates, it should be given Participant status, entitling it to audit the configuration of its products and provide commentary on test results. Compl., Ex. A at 6.1.10.2.

The Standard requires that the testers and Participants provide "timely," "relevant," and "fair" responses to inquiries from one another. Compl., Ex. A at 7.3; 8.1.2; 8.1.2.1. It calls upon testers to treat all test subjects fairly and equally. Compl., Ex. A at 8.2.1. It prohibits testers from offering an advanced look at malware sample sets to be used in tests to some but not all of the test subjects. *Id.* It prohibits vendors from revising their products while a test is being

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

conducted in order to influence the test results. Compl., Ex. A at 8.1.1. It requires testers and

vendors to disclose conflicts of interest. Compl., Ex. A at 9.2.4.3.1.

The Standard does not and could not require any given vendor to participate in any given

test. But it expressly recognizes "the need for independent product testing to help end users

adequately understand the differences in security products, and to validate Vendors' claims in the

market." Compl., Ex. A at 1.2. The stated purposes of the Standard include "providing Testers

with Fair access to Products as they run Tests they intend to accredit," and "encouraging more

voluntary participation by Vendors." Compl., Ex. A at 1.2. It states that "All potential Test

Subject Vendors are encouraged to provide their Product as requested by any Tester." Compl.,

Ex. A at 5.4. It states that vendors may notify testers that they do not want their products

included in a test, but that testers are not required to comply with any such request. Compl., Ex.

A at 5.4.1. The Standard requires AMTSO to "serve as an advocate for the rights of Testers to

have access to and test all Anti-Malware Products." Compl., Ex. A at 10.12.

The Standard expressly prohibits cheating by vendors. Compl., Ex. A at 8.1.1. It

explicitly limits the detail required in the Test Plan in order to avoid disclosure of information

that would enable vendors to cheat. Compl., Ex. A at 6.1.11.1; 6.1.11.2; 6.1.12.2.

Because the AMTSO Standard "is voluntary, there is no requirement that any AMTSO

member, or any other party, follow it," Compl., Ex. E, testers remain free to structure their tests,

and their communication protocols, in any way they see fit. As the Standard applies to

individual tests, not to testers, even testers who decide to follow the Standard are under no

obligation to conduct only Standards-compliant tests. Vendors remain free to cooperate or refuse

to cooperate with any given test, whether Standards-based or not. As NSS stated in a letter it

sent to AMTSO before it filed suit, attached to the Complaint as Exhibit B, both before and after

the AMTSO Standard was approved, venders are free to elect to participate in "only those tests…

that are performed in the way they dictate." Compl., Ex. B. Before it decided to file this suit, the

voluntary nature of the Standard was one of NSS's chief concerns: "We do not believe AMTSO

has the capability to enforce compliance with its Standards." Compl., Ex. B.

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

When the AMTSO membership voted to adopt the draft Standard in May of 2018, neither testers nor vendors were unanimous in their support or their opposition. Five testers voted in favor of adoption: SE Labs, Virus Bulletin, MRG Effitas, Veszprog, and OPSWAT. Five testers voted against adoption: AV-Comparatives, AV-Test, ICSA Labs, NSS Labs, and SKD Labs. Four vendors voted against adoption: Avast, Avira, ESET, and Kaspersky Lab. (Ex. C.)

To date, three testers have conducted tests under the Standard: SE Labs, MRG Effitas, and AV-Comparatives. (Ex. A, pp. 31-32.)

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). A claim is "plausible" only if a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. (citation omitted). While the Court must accept all factual allegations pleaded in a complaint as true, it is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted).

In the antitrust context, courts must be particularly rigorous in ensuring that a plaintiff's claims rise to the level of plausibility. As the Supreme Court has cautioned: "proceeding to antitrust discovery can be expensive," so "a district court must retain the power to insist upon

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly,* 550 U.S. at 558 (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" an antitrust violation "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id*. at 557.

Accordingly, a complaint, such as this one, that merely states "labels and conclusions," or tenders "naked assertion[s]," without "further factual enhancement" is insufficient. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (a plaintiff must do more than allege "an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citation omitted).

Contradictory allegations are inherently implausible, and fail to comply with Rule 8, *Twomby*, and *Iqbal*. *Hernandez v. Select Portfolio Servicing Inc.*, No. CV 15-01896-MMM (AJWx), 2015 U.S. Dist. LEXIS 82922, *24-25 (C.D. Cal. June 25, 2015) (citing *Rieber v. OneWest Bank FSB*, No. 13-CV-2523 W JLB, 2014 U.S. Dist. LEXIS 62682 (S.D. Cal. May 6, 2014) ("Plaintiffs' Complaint pleads contradictory facts that fail to provide fair notice to Defendants regarding the basis of the FDCPA claim[, and]... keeps Plaintiffs' FDCPA claim from meeting Rule 8's requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' rising above a speculative level.")).

## I. THE COURT SHOULD CONSIDER CERTAIN ADDITIONAL DOCUMENTS AS EITHER INCORPORATED BY REFERENCE OR SUBJECT TO JUDICIAL NOTICE.

In the Ninth Circuit, a court may look to beyond the four corners of the complaint in deciding a motion to dismiss under two circumstances: under the "incorporation by reference" doctrine or through judicial notice.

Under the "incorporation by reference" doctrine, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC*

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012). "Specifically, courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Id.* When such a document is incorporated by reference pursuant to this doctrine, "[a] court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

This rule applies to documents that form the basis of a plaintiff's case or documents that are quoted extensively, on the theory that such documents are not truly outside the complaint. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). "One purpose of the rule is to prevent a plaintiff from quoting 'an isolated statement from a document' in the complaint, when the complete document refutes the allegations." *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, at 1166 (S.D. Cal. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997). The "incorporation by reference" doctrine extends to situations in which "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that "[t]he rationale of the 'incorporation by reference' doctrine applies with equal force to Internet pages as it does to printed material."). "[S]uch an extension is supported by the policy concern underlying the rule:  Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706-07 (9th Cir. 1998).

In this case, the Court should consider screenshots from AMTSO's website, attached as exhibits to the Declaration of John Hawes and filed contemporaneously herewith, as part of the Complaint.  The Complaint relies extensively on AMTSO's website to provide factual support for its allegations.  Exhibit A to the Complaint is the AMTSO Standard, which is the heart of NSS's allegations, and NSS cites to AMTSO's website as the source of the Standard.  *See*

DEFENDANT ANTI-MALWARE TESTING
STANDARDS ORGANIZATION, INC.'S
MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Compl. ¶13. NSS relies on the AMTSO website for support for its allegations regarding AMTSO's purpose. Compl. ¶ 62. It cites to AMTSO's website for reference to the Standard and also in reference to the Fundamental Principles of Testing. Compl. ¶ 63. It refers to administration of the AMTSO website to support its alleged conspiracy. Compl. ¶ 67. And it cites to a blog published on the AMTSO website by Dennis Batchelder, President of AMTSO. Compl. ¶ 84. In relying on the AMTSO website for factual support for its allegations, NSS itself has required the Court to consider the contents of the website to be true for purposes of evaluating the Complaint's plausibility under Fed. R. Civ. P. 12(b)(6), and the AMTSO website, and particularly the portions of the website that squarely address issues NSS raises in its Complaint, cannot be said to be outside the pleadings. It should be considered part of the Complaint, and the contents of the screenshots attached to the Hawes Declaration should be assumed to be true for purposes of this motion to dismiss. Alternatively, these screenshots should be considered because they are subject to judicial notice, as discussed below with reference to screenshots from NSS's website.

The Court should also consider the screenshots from NSS's website, attached to the Declaration of Brenna Legaard as exhibits B, C, D, and E, and a press release issued by NSS, attached as the Legaard Dec. as Exhibit A, to be subject to judicial notice. These materials are properly subject to judicial notice because they satisfy Rule 201's requirement of not being "subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) (judicial notice proper as to information on defendant's website regarding earnings history of fund); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179, n.8 (S.D.N.Y. 2006) (taking judicial notice of press releases on plaintiffs' website in antitrust action: "For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'"). Here, NSS's allegation of antitrust injury hinges on its contention that the

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

provisions of the AMTSO Standard permit vendors to cheat on testing while NSS's own testing practices do not. NSS has thus placed its own testing practices at the center of its allegations of antitrust injury, as discussed further below. NSS's website and press release contain highly relevant information regarding its EPP/AEP testing practices. NSS can readily ascertain the authenticity of these materials. The Court should assume their content is true for purposes of this motion.

## II.    NSS'S PER SE CLAIMS AGAINST AMTSO MUST BE DISMISSED.

Under the Standards Development Organization Advancement Act of 2004 ("SDOAA"), "the conduct of a standards development organization while engaged in standards development activity shall not be deemed illegal per se." 15 U.S.C. § 4302 (2). AMTSO is a standards development organization. It is an international organization that plans, develops, establishes, and coordinates voluntary standards. As described above, its procedures incorporate the attributes of openness, balance of interests, due process, an appeals process, and consensus. 15 U.S.C. § 4301(a)(8). Accordingly, AMTSO's conduct in developing the Standard cannot be deemed illegal per se.

Congress passed the SDOAA in order to protect organizations such as AMTSO from lawsuits such as this one:

> Technical standards are written by hundreds of nonprofit voluntary consensus standards bodies in a nonexclusionary fashion, using thousands of volunteers from the public and private sectors . . . such developers are vulnerable to being named as codefendants in lawsuits even though the likelihood of their being held liable is remote in most cases, and they generally have limited resources to defend themselves in such lawsuits. Standards development organizations do not stand to benefit from any antitrust violations that might occur in the voluntary consensus standards development process . . . . if relief from the threat of liability under the antitrust laws is not granted to voluntary consensus standards bodies, both regarding the development of new standards and efforts to keep existing standards current, such bodies could be forced to cut back on standards development activities at great financial cost to both the Government and to the national economy.

149 Cong Rec H 5104 (June 10, 2003).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

AMTSO is a nonprofit organization. Its team includes two contractors, its Chief Operating Officer and Standards Program Manager. (Ex. A, pp. 11-19.) Everyone else working for AMTSO does so as a volunteer. AMTSO members give generously of their time in a sincere effort to collaborate to improve the testing of anti-malware products, including by developing tools and guidelines, sharing information about emerging threats and best practices, and ultimately working on the Standard, in order to improve their industry. As a small nonprofit, AMTSO has no war chest to defend against this suit. As a membership organization, it does not stand to benefit from any of the alleged conduct in NSS's Complaint. And as an organization entirely dependent on the energy and dedication of volunteers, it has already felt the chilling effect of this litigation.

NSS's threadbare allegation that AMTSO is dominated by vendors is implausible in light of the list of working group members incorporated in its Complaint, Ex. A at p. 5, and by a host of publicly available information regarding AMTSO, as discussed above. The development and adoption of the Standard was not unanimous, but the Standard is a voluntary protocol that was developed through a process that incorporated openness, balanced the interests of vendors and testers, and provided and continues to provide interested parties with an opportunity to voice objections and request changes.

Not only does the SDOAA protect AMTSO from per se liability, it entitles AMTSO to an award of the costs of its defense if NSS's claims or conduct during the litigation are found to be frivolous, unreasonable, without foundation, or in bad faith. 15 U.S.C. § 4304(a)(2).

Accordingly, all per se claims against AMTSO, including Counts III and VII, must be dismissed. AMTSO's "conduct shall be judged on the basis of its reasonableness, taking into account all relevant factors affecting competition, including, but not limited to, effects on competition…." 15 U.S.C. § 4302 (2). As explained by co-defendants CrowdStrike and Symantec, NSS has utterly failed to plead sufficient facts for its rule of reason claims to survive dismissal, and the rule of reason claims against AMTSO must be dismissed as well.

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## III. NSS HAS FAILED TO PLAUSIBLY PLEAD LEAD ANTITRUST INJURY.

Antitrust laws exist to protect competition, not competitors. To establish standing, NSS "must prove ***antitrust injury***, which is to say injury of the type antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

In the Ninth Circuit, an antitrust plaintiff must plead and ultimately prove four elements to establish antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,* 190 F.3d 1051, 1055 (9th Cir. 1999). NSS has failed to plausibly plead that AMTSO has engaged in any unlawful conduct or that NSS has sustained any injury that flows from anything AMTSO has done, and NSS has failed to plausibly allege any injury to competition.

### A. NSS has Failed to Plausibly Allege That AMTSO has Engaged in Unlawful Conduct That Injures Competition.

NSS's allegations that AMTSO has engaged in unlawful conduct that is the type that antitrust laws were intended to prevent, i.e., injurious to competition, not just to NSS, hinge on its allegation that the Standard is anticompetitive. But what NSS says about the Standard in its Complaint is squarely contradicted by what it says about its own testing in documents that the Court may consider either as incorporated by reference into the Complaint or as subject to judicial notice. In its Complaint, NSS alleges that the Standard is anticompetitive because it requires that testers inform vendors that their products are going to be tested and provide them with information about the test, such as what sorts of threats will be used in the test, in advance of the test. Compl. ¶ 76. NSS alleges that this information gives vendors the ability to tailor their products in advance of the test. Compl. ¶ 79. NSS alleges that adherence to the Standard thus keeps prices high in the EPP and AEP markets because vendors are able to conceal problems with their products that testing would otherwise reveal, discouraging the entry of new competitors, and preventing consumers from demanding the lower prices they would otherwise demand. Compl. ¶ 96.

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

But NSS itself provides this information to vendors, and thus cannot plausibly allege that the provision of this information is anticompetitive. Indeed, although NSS's Complaint alleges that NSS's own tests "are considered objective and reliable" because it does not give vendors enough information to permit them to cheat, Compl. ¶ 99, NSS provides the same prior notice of its public tests that compliance with the Standard provides, and NSS's AEP test methodology, published on its website, provides the same types of information the AMTSO Standard requires testers provide. Legaard Decl. Exs. C, E. NSS's allegations that the disclosures required by the Standard are anticompetitive is contradicted by its allegation that its own testing is procompetitive. Conflicting allegations should not be taken as true in the context of a motion to dismiss, as they are inherently implausible. *Ahmadi v. Nationstar Mortg., LLC*, No. SACV 16-0062 AG (JCGx), 2016 U.S. Dist. LEXIS 45904 (C.D. Cal. Mar. 31, 2016) (the Court is "not required to accept inconsistent allegations as true."). Consequently, NSS has failed to plausibly plead anticompetitive injury, and its claims should be dismissed.

Specifically, NSS's website states that when NSS conducts AEP public testing, "[v]endors are notified upon consideration and upon formal selection." Legaard Decl. Ex. D. NSS invites vendors to participate in AEP public tests, and solicits input from them about how the test should be conducted. *Id.* at Ex. C. NSS alleges in its Complaint that the AMTSO Standard is anticompetitive because it provides for disclosures regarding the methodology of the test, the types of threats to be used in testing, the testing environment that will be used, and how the products' performance will be assessed. Compl. ¶78. But NSS's published test methodology provides several pages of detailed information regarding how the products' performance will be assessed, the types of threats they will be subjected to, and the testing environment that will be used. Legaard Decl. Ex. D. NSS even touts the fact that it conducts its tests pursuant to a published methodology on its website: "the test methodology is available ***in the public domain*** to provide transparency and to help enterprises understand the factors behind test results." Legaard Decl. Ex. C (emphasis original).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

On one hand, NSS argues that prior notice of a test is pro-competitive when NSS provides it. On the other hand, NSS alleges that prior notice is anti-competitive when it is provided pursuant to the AMTSO Standard. NSS's allegations are conflicting. Information regarding the types of threats used in testing cannot be a valuable promotion of transparency when NSS provides it and enablement of cheating when provided pursuant to the AMTSO Standard. NSS's allegations that the AMTSO Standard is anti-competitive are contradicted by its allegations about its own testing, and therefore are not plausible. *Apple Inc. v. Psystar Corp.,* 586 F. Supp. 2d 1190, 1200 (N.D. Cal. 2008) (Alsup, J.) (granting motion to dismiss where antitrust claim did not plausibly allege an independent market because the allegations were internally contradictory); *Alatraqchi v. Uber Techs., Inc.,* No, C-13-03156 JSC, 2013 U.S. Dist. LEXIS 119642 (N.D. Cal. Aug. 22, 2013) (Corley, J.).

Moreover, even aside from the fact that its allegations are contradicted by its own website, NSS's contention that the provision of information about a test to all test participants is anticompetitive is devoid of factual support and defies common sense. Nowhere in its Complaint does NSS describe with any factual support how a vendor can use the information provided under the Standard to cheat, nor does NSS allege that any vendor has ever actually done so. Moreover, it is important to keep in mind that public tests compare products against one another, and the provision of basic information to all participating vendors is pro-competitive because it keeps the playing field level.

A useful analogy is the cross examination of witnesses. Federal courts require extensive witness disclosures in advance of testimony at trial, and many practitioners feel that these disclosures promote the truth-seeking purpose of cross examination. Some state courts provide for no witness disclosures whatsoever, and some practitioners would argue vehemently that trial by ambush is most effective. Both camps have a valid argument. But there is no valid argument for requiring witness disclosures of one party to a trial but not the other. In other words, the provision of information does not defeat the fairness of a trial (or a comparative test). But an undisclosed information disparity between litigants (or test subjects) does. Because the public

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

tests at issue here are comparative, providing advance information to some vendors and not to others distorts the results. One way to prevent an information disparity is to withhold all information from all participants. But as NSS's Complaint itself demonstrates, some vendors will buy private testing in advance of the public test, Compl. ¶40, and will acquire information that way. The other way is level the playing field is to provide a basic level of information to all participants, which is what NSS and other testers do when they announce upcoming tests and publish their test methodologies, and is what the AMTSO Standard provides.

As NSS has failed to plausibly allege that the AMTSO Standard is anti-competitive, it has failed to allege that AMTSO has engaged in conduct that has injured competition, and thus NSS has failed to allege antitrust injury. *American Ad Mgmt., Inc. v. General Tel. Co.,* 190 F.3d 1051, 1055 (9th Cir. 1999).

For the same reasons, NSS has failed to allege facts showing a threatened injury of the type antitrust laws were intended to prevent—i.e., an injury to competition. *Am. Ad Mgmt., Inc.,* 190 F.3d at 1055 (quoting *Brunswick*, 429 U.S. at 489.). As it has failed to plausibly plead that the Standard is anticompetitive, it has failed to allege that AMTSO's adoption or even promotion of the Standard injures or threatens injury to competition, and its claims must be dismissed.

### B. NSS has Failed to Plausibly Plead That it has Sustained Injury That Flows From Any Anticompetitive Act.

In order to allege antitrust injury, NSS must plausibly allege that AMTSO's allegedly illegal conduct caused an injury to NSS that flows from that which makes the conduct unlawful. *Am. Ad Mgmt., Inc.,* 190 F.3d at 1055 . Causal antitrust injury is a substantive element of an antitrust claim, and the fact of plausible injury must be alleged at the pleading stage. *Somers v. Apple, Inc.,* 729 F.3d 953, 963 (9th Cir. 2013).

NSS alleges that as a result of the alleged boycott, it "has lost sales and profits from the sale and license of testing reports, including its AEP Group Test reports, because fewer customers purchase reports that do not include all market participants than would purchase reports that included all market participants." Compl. ¶ 100. It also alleges that it cannot charge

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

as much for its public reports because they do not include "all market participants." Compl. ¶¶ 101-102.

But by NSS's own admission, the AMTSO Standard did not give any vendor any new right or ability to refuse to be tested. Both before and after the Standard was approved, vendors were free to resist or attempt to resist inclusion in a test, as NSS itself acknowledged. *See* Compl., Ex. B ("We believe the ultimate goal of the AMTSO Standards project will never be achieved since the Draft Standard does not enforce vendor participation in tests. This means vendors can and will continue to select only those tests and test results that support their marketing claims and are performed in the way they dictate.").

Moreover, according to NSS, when a vendor refuses to be tested, NSS tests them anyway. On its website, NSS acknowledges that the advance notice it voluntarily provides vendors gives them the opportunity to refuse to be tested, but states that NSS tests products even if vendors refuse: "We prefer that vendors come willingly, but if they decline, we may include their devices anyway, particularly if they have a significant market share and/or have gained broad visibility through bold claims to the marketplace. Under this scenario, products for testing are typically purchased, but may also be donated by interested parties, and we will conduct the testing independently." Legaard Decl. Ex. D. By its own admission, NSS cannot be injured by a vendor's refusal to be tested. NSS's claims that it is injured by the Standard are contradicted by NSS's own statements, and are implausible.

Further, NSS's claims are nonsensical. NSS has never run an AEP group test that included "all market participants." It is doubtful that any testing lab has ever run a test that included every product in the market. In fact, NSS's materials state that it deliberately selects only certain vendors for inclusion in its tests. Legaard Decl. Ex. D.

NSS's allegations of harm are also refuted by its AEP test history as described by NSS's own website and press release. NSS alleges that the alleged conspiracy began in 2016. Compl. ¶23. NSS's first ever AEP group test was conducted in 2017, and included 13 vendors, including Crowdstrike, ESET, and Symantec, plainly refuting NSS's allegation that alleged conspiracy

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

impacted participation in its AEP tests. Legaard Decl. A. Even more vendors participated in NSS's 2018 AEP test. That test included 20 vendors. Legaard Decl. Ex. B.

NSS alleges that it has lost sales and profits from the performance of private testing for the vendor conspirators and their customers. Compl. ¶103. But it does not name a single customer that it has lost as a result of the alleged conspiracy.

The AMTSO Standard was approved only a few months ago. Compl., Ex. A at p. 1. Before it was approved, only limited pilot testing was conducted under it, and even to date, only three testers have conducted tests using the Standard. Hawes Decl. Ex. A at pp. 31-32. NSS's allegation that it has been harmed by a conspiracy that began in 2016 to boycott testers that refused to follow a Standard that was not adopted until May of 2018, and which to this day has been used only a few times, is simply not plausible. The fact that NSS was able to test more products as this alleged conspiracy progressed renders NSS's allegation that it has been harmed objectively baseless.

## THE COURT SHOULD DISMISS THE CARTRIGHT ACT CLAIMS.

NSS's state law claims against AMTSO should be dismissed for the same reasons. *See, e.g., Analogix Semiconductor, Inc. v. Silicon Image, Inc*., No. C-08-2917 JF (PVT), 2008 U.S. Dist. LEXIS 118508 (N.D. Cal., October 28, 2008) (dismissing Cartwright claim where complaint did not state a Sherman Act claim); *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000) (affirming dismissal of supplemental state claims where common defect was "fatal to all of [the plaintiff's] claims"); *Somers v. Apple, Inc.*, Case No. C 07-06507 JW, 2011 WL 2690465, at *7 (N.D. Cal. Jun. 27, 2011) (dismissing state law claims on the merits where federal antitrust claims were insufficient and served as the basis for plaintiff's state law claims), *aff'd on other issues*, 729 F.3d 953 (9th Cir. 2013).

## ALTERNATIVELY, THE COURT SHOULD DISMISS THE DOE DEFENDANTS.

Finally, in the event that the Court does not dismiss all claims in NSS's Complaint, it should dismiss Does 1-50. In the Ninth Circuit, "generally, 'Doe' pleading is improper in federal court and is disfavored." *Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1213-14 (D. Haw. 2012)

DEFENDANT ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION TO DISMISS – 5:18-cv-05711-BLF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

(quoting *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 918 n. 4 (N.D. Cal. 2010). It is permissible only where the identity of alleged defendants will not be known prior to the filing of the complaint. *Id.* (quoting *Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999). Here, NSS's Complaint contains no factual allegations regarding any Doe defendant, and therefore NSS has not competently pleaded any claim for relief against any fictitious Doe defendant. Moreover, NSS's claims of injury are based on its allegation that it has already been injured by a boycott that allegedly began in 2016. There is no reason why NSS would not know the identity of all vendors who have refused to do business with it as a result of the alleged boycott.

The claims against the Doe defendants have been understood by AMTSO members as a threat to name them in this litigation if they displease or even draw the attention of NSS. The Doe defendants serve no legitimate purpose, but add to the *in terrorem* effect of this litigation. The Doe defendants should be dismissed.

**CONCLUSION**

For the foregoing reasons, NSS has failed to plead any viable claims against AMTSO. It cannot maintain a per se claim against AMTSO, and it has failed to plausibly plead that the AMTSO Standard has injured competition or NSS. NSS's Complaint should be dismissed.

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Dated this 26th day of November, 2018.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By: */s/ Brenna K. Legaard*

Brenna K. Legaard (*Admitted Pro Hac Vice*)
Email: blegaard@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW Fifth Avenue, Ste. 1900
Portland, OR 97204
Telephone: 503.222.9981

Arnold E. Brown (SBN 167679)
Email: abrown@schwabe.com
Stephen G. Sullivan (SBN 164495)
Email: ssullivan@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
455 N. Whisman Rd., Ste. 200
Mountain View, CA 94043
Telephone: 650.396.1401

*Of Attorneys for Defendant*
*Anti-Malware Testing Standards Organization, Inc.*

SCHWABE, WILLIAMSON & WYATT,
P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900