MAKAN DELRAHIM
Assistant Attorney General, Antitrust Division

DAVID L. ANDERSON (CABN 149604)
United States Attorney

ANDREW C. FINCH
Principal Deputy Assistant Attorney General, Antitrust Division

MICHAEL F. MURRAY
Deputy Assistant Attorney General, Antitrust Division

TAYLOR M. OWINGS
Counsel to the Assistant Attorney General, Antitrust Division

JEFFREY D. NEGRETTE (DCBN 482632)
Attorney, Antitrust Division
950 Pennsylvania Ave. NW
Office 3224
Washington, DC 20530
Telephone: (202) 598-2384
Facsimile: (202) 514-0536
E-mail: jeff.negrette@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NSS LABS, INC.,<br><br>　　　　Plaintiff<br><br>v.<br><br>CROWDSTRIKE, INC.; SYMANTEC CORPORATION; ESET, LLC; ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC; AND DOES 1-50, INCLUSIVE,<br><br>　　　　Defendants. | No. 5:18-cv-05711-BLF<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES** |

# INTEREST OF THE UNITED STATES

The United States respectfully submits this statement pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal court. The United States enforces the federal antitrust laws and has a strong interest in the proper interpretation of the Standards Development Organization Advancement Act of 2004 ("SDOAA"). In particular, the United States has a significant interest in the correct interpretation of the exemption from *per se* treatment for standards development organizations engaging in standard setting activities. An overly broad interpretation of the SDOAA exemption will harm American consumers by inadvertently protecting the very conduct our antitrust laws were designed to prevent. Antitrust exemptions should not be extended more broadly than allowed by the applicable statute, given that antitrust law "is a central safeguard for the Nation's free market structures." *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1109 (2015).

# INTRODUCTION

Plaintiff NSS Labs, Inc. ("NSS") filed a complaint alleging the Anti-Malware Testing Standards Organization, Inc. ("AMTSO") and its member organizations worked together to promulgate an industry standard with the effect of unreasonably restraining competition in violation of Section 1 of the Sherman Act. Because, according to NSS, the industry standard requires a group boycott, and that group boycott is the type of restraint on trade that the antitrust laws treat as having a predictable anticompetitive effect, NSS pleads that the conspiracy to promulgate and give effect to the standard was *per se* unlawful. AMTSO filed a motion to dismiss alleging, in part, that AMTSO is a "standards development organization" entitled to exemption from *per se* claims under the SDOAA.

The United States urges the Court not to dismiss NSS's *per se* claims based on a presumption that the SDOAA applies to AMTSO without further evidence, because NSS's allegations raise a factual question about whether the SDOAA applies to AMTSO. In particular, NSS alleges that "AMTSO's membership consists principally of cybersecurity companies [with] only a small number of companies who provide testing services…," and thus that the

organization's standards development process may not incorporate the "balance of interests" required by the SDOAA. Compl., Doc. 1, ¶ 54. Given these allegations, AMTSO's argument for dismissal of the *per se* claims based on the presumed applicability of the SDOAA is conclusory and premature.

### 1. Legal Background

The SDOAA, codified at 15 U.S.C. §§ 4301-4306, amended the National Cooperative Research and Production Act of 1993 ("NCRPA") to preclude *per se* treatment for any "standards development organization" ("SDO") while engaged in "standards development activity."[1] 15 U.S.C. § 4302(2). The SDOAA defines an SDO as an organization that "plans, develops, establishes, or coordinates voluntary consensus standards using procedures that incorporate the attributes of openness, balance of interests, due process, an appeals process, and consensus in a manner consistent with the Office of Management and Budget Circular Number A-119, as revised February 10, 1998." 15 U.S.C. § 4301(a)(8). This Circular does not define any of these attributes other than "consensus," but the SDOAA legislative findings and history as well as OMB's 2016 revision of the Circular provide further guidance.

The SDOAA's own legislative findings elaborate on the attributes outlined in the Circular and provide further insight on their interpretation, including a specific reference to balance of interests: "Such principles provide for…balancing interests so that standards development activities are not dominated by any single group of interested persons…." Pub. L. No. 108-237, title I, § 102(5)(C), 118 Stat. 661, 662 (2004).

From a practical standpoint, the "balance of interests" requirement of the SDOAA is particularly critical as it gives meaning to the statute's other required attributes of openness, due process, an appeals process, and consensus. A "single group of interested persons" is unlikely to leverage these other tools of consensus building because there is little to disagree about. A

---

[1] The following discussion focuses on the procedural attributes required by the SDOAA's definition of an SDO. The ability of an organization to claim the SDOAA's protections will depend on whether it engaged in qualifying "standards development activity" and whether any such activities were conducted using the type of procedures required under the Act.

STATEMENT OF INTEREST OF THE UNITED STATES
Case No. 5:18-cv-05711-BLF                    2

dominant single group is also able to circumvent the other protective attributes enumerated in the SDOAA to suppress minority interests.  As an example, an SDO's consensus requirements (i.e. 70% of votes) may be overcome when one group holds overwhelming voting power, even though no actual consensus among interest groups was reached.

Courts recognize the competitive harm that can ensue in such circumstances.  "There is no doubt that the members of [trade] associations often have economic incentives to restrain competition and that the product standards set by such associations have a serious potential for anticompetitive harm."  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 (1988).  Yet despite this risk, competitive benefits can result when "private associations promulgate…standards…through procedures that prevent the standard-setting process from being biased by members with economic interests in stifling product competition…."  *Id.* at 501.  "What [parties] may not do (without exposing [themselves] to possible antitrust liability for direct injuries) is bias the process by…stacking the private standard-setting body with decisionmakers sharing their economic interest in restraining competition."  *Id.* at 511; *see also Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571 (1982) ("[A] standard-setting organization…can be rife with opportunities for anticompetitive activity.").  The attributes and criteria identified in the SDOAA provide criteria to organizations for how to mitigate these risks.

A 2003 House Report referenced both these cases as "particularly instructive" in shaping the SDOAA.  H.R. Rep. No. 108-125, at 4 (2003).  In explaining the SDOAA's basis for precluding *per se* treatment, Congress reasoned: "The rationale…is that SDOs, as non-profits serving *a cross-section of an industry*, are unlikely to engage in anti-competitive conduct *creating market dominance*."  *Id.* at 3-4 (emphasis added).  This "cross-section of an industry" references the "balance of interests" requirement of the SDOAA that works to prevent dominance by a subset of the industry.

In 2016, the Office of Management and Budget revised Circular A-119, referenced by the SDOAA, elaborating on the definition of each of the Circular's previously identified attributes. Notice on Revision of OMB Circular No. A-119, 81 Fed. Reg. 4673 (Jan. 27, 2016).  The 2016

STATEMENT OF INTEREST OF THE UNITED STATES
Case No. 5:18-cv-05711-BLF                                    3

Circular defines the "balance" requirement as: "The standards development process should be balanced. Specifically, there should be meaningful involvement from a broad range of parties, with no single interest dominating the decision-making." Office of Mgmt.& Budget, Exec. Office of the President, OMB Circular No. A-119 § 2e(ii), as revised January 27, 2016.

**2. Factual Allegations**

NSS alleges a number of facts about the structure and makeup of AMTSO which bear on the question whether it meets the SDOAA's balance of interests requirement. Specifically, "we [NSS] have observed that the AMTSO forum (currently dominated by vendors) has on more than one occasion attempted to limit [test content and procedures]." Compl., Doc. 1, ¶ 17. Further, "AMTSO's membership consists principally of cybersecurity companies and only a small number of companies who provide testing services to the cybersecurity companies." *Id*. ¶ 54. Finally, "[w]hile providers of…testing services, including NSS Labs, are allowed to and do participate in AMTSO, they constitute a small minority of AMTSO members and are easily outvoted by…product vendor members as indeed they were in the adoption of the AMTSO Testing Standard." *Id.* ¶ 60.

In its motion to dismiss, AMTSO declares "all per se claims…must be dismissed" because "the SDOAA protect[s] AMTSO from per se liability…." Def. AMTSO Mot., Doc. 51, at 13. AMTSO claims to be an SDO, conclusively stating it satisfies each of the SDOAA required attributes. *Id.* at 12. As to the "balance of interests" attribute, however, AMTSO concedes its membership is skewed, as NSS alleges: "vendors do numerically outnumber testers…in the AMTSO membership...." *Id.* at 5.

## ARGUMENT

The United States urges the Court to reject AMTSO's claimed exemption from *per se* liability on the basis of its own conclusory assertion that it qualifies as an SDO under the SDOAA.[2]

---

[2] This filing focuses on the "balance of interests" requirement of the SDOAA as an example of a clear factual dispute between the parties of a critical issue that must be resolved prior to determining whether AMTSO qualifies as an SDO under the SDOAA. The United States takes

As an initial matter, the Court should treat the *per se* exemption under the SDOAA as an affirmative defense, putting the burden on AMTSO to prove that it qualifies, with a fact-specific showing. The United States is aware of no prior court decision assigning the burden of proof to either party in the context of the application of the SDOAA, but it believes that assigning the burden to AMTSO is consistent with fundamental principles of burden-shifting articulated by the Supreme Court. "[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof." *Smith v. United States*, 568 U.S. 106, 112 (2013) (quotation marks and citation omitted). AMTSO is best situated to articulate its own procedures for reaching consensus, and proffer evidence showing that those procedures satisfy the requirements of the SDOAA.

Requiring AMTSO to bear the burden of qualifying for the *per se* exemption is also consistent with Supreme Court precedent limiting antitrust exemptions. "Implied antitrust immunities…are disfavored, and any exemptions from the antitrust laws are to be strictly construed." *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 67-68 (1985). The bipartisan Antitrust Modernization Commission explained the reason for this principle in a 2007 report, advising Congress to avoid immunities and exemptions that "displace free-market competition absent extensive, careful analysis and strong evidence…." Antitrust Modernization Commission, *Report and Recommendations* 334 (2007), *available at* http://govinfo.library.unt.edu/amc/report_recommendation/amc_final_report.pdf. According to the Commission, the free-market values underpinning the nation's antitrust laws would be in jeopardy if exemptions were granted without scrutiny. "Courts should construe all immunities and exemptions from the antitrust laws narrowly." *Id.* at 337.

AMTSO's conclusory assertions in its motion to dismiss are insufficient to demonstrate that AMTSO qualifies as an SDO under the SDOAA, and the Court therefore should not grant its motion to dismiss the *per se* claims on that basis. AMTSO summarily pronounces that it satisfies the SDOAA's requirements, but it does not offer any specifics to support that claim.

---

no position as to whether other requirements of the SDOAA may also be an independent basis for disqualification.

STATEMENT OF INTEREST OF THE UNITED STATES
Case No. 5:18-cv-05711-BLF                                     5

Indeed, to the contrary, it admits its membership is *not* balanced.  Def. AMTSO Mot., Doc. 51, at 12; *id.* at 5 ("vendors do numerically outnumber testers…in the AMTSO membership").  The Court should therefore resolve the application of the SDOAA at a later stage, if AMTSO properly supports its claim that it follows procedures that qualify it for SDOAA protection.  *Cf. McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006) ("[I]t is incorrect to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense."); *see also PageMelding, Inc. v. ESPN, Inc.*, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012) (holding that there is "widespread agreement" within the Northern District of California that heightened pleading standards for complaints apply equally to affirmative defenses).

In the alternative, even if the Court holds that a plaintiff bears the burden of proving the SDOAA does not apply to a defendant, the Court should find the Complaint here sufficient to overcome a motion to dismiss.  NSS alleges facts that raise serious doubt that AMSTO qualifies as an SDO.  NSS pleads with specificity that cybersecurity vendors, who compete with each other, are able to use AMTSO to restrict competition despite objection among testing companies.  This is because, according to NSS, AMTSO's makeup is unbalanced toward vendors.  Taken as true, a fact-finder could conclude that AMTSO does not use procedures that ensure a balance of interests, and that AMTSO thus fails to qualify for the *per se* exemption under the SDOAA.  It would therefore be inappropriate to decide that the exemption applies at the motion to dismiss stage.

\*       \*       \*

Congress extended the *per se* exemption to specially qualified SDOs that present little risk of anticompetitive conduct, with particular focus on enumerated attributes that prevent dominance by any single group of interested persons.  Whether those criteria are met presents legal and factual matters that cannot be resolved on the pleadings in this case.  To determine AMTSO's eligibility under the SDOAA at this point is premature and risks extending an antitrust exemption beyond Congress' intent.  Accordingly, the United States recommends the Court defer assessing AMTSO's eligibility for a *per se* exemption until a later stage in the proceeding.

|   |   |
|---|---|
| | Respectfully submitted, |
| | MAKAN DELRAHIM<br>Assistant Attorney General |
| | DAVID L. ANDERSON<br>United States Attorney |
| | ANDREW C. FINCH<br>Principal Deputy Assistant Attorney General |
| | MICHAEL F. MURRAY<br>Deputy Assistant Attorney General |
| | TAYLOR M. OWINGS<br>Counsel to the Assistant Attorney General |
| | JEFFREY D. NEGRETTE<br>Attorney, Appellate Section |
| Dated:  June 26, 2019 | <u>/s/ Jeffrey D. Negrette</u><br>JEFFREY D. NEGRETTE |
| | Attorneys for the United States of America |