IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
FEINBERG DAY KRAMER ALBERTI LIM
TONKOVICH & BELLOLI LLP
577 Airport Blvd, Suite 250
Burlingame,CA. 94010
Telephone: 650.825.4300

Attorneys for Plaintiff
NSS Labs, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NSS LABS, INC.,<br><br>              Plaintiff,<br><br>       v.<br><br>CROWDSTRIKE, INC., SYMANTEC CORPORATION, ESET, LLC, ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC. AND DOES 1-50, INCLUSIVE,<br><br>              Defendants. | CASE NO. 5:18-CV-05711-BLF<br><br>**PLAINTIFF'S OPPOSITION TO ANTI-MALWARE TESTING STANDARDS ORGANIZATION, INC.'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:        April 2, 2020<br>Time:        9:00 AM<br>Location: Crtm 3, San Jose<br>Judge:      Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................. 1

   A.   The AMTSO SLAPP Motion Was Expressly Made Contingent on an Event Which Never
        Happened. ...................................................................................................................... 1

   B.   The AMTSO SLAPP Motion Is Barred by the California Supreme Court's *Newport
        Harbor Ventures* Decision. ........................................................................................... 2

   C.   The Purpose of the Anti-SLAPP Statute Could Not Have Been Advanced by AMTSO's
        Anti-SLAPP Motion. ..................................................................................................... 6

   D.   The anti-SLAPP Statute Does Not Apply Because NSS's Cartwright Act Claim Do Not
        Arise From AMTSO's "rights of petition or free speech." ........................................... 6

   E.   NSS's FAC Alleges Commercial Speech Statutorily Exempt from the anti-SLAPP
        Statute ............................................................................................................................ 7

   F.   The Cases Cited by AMTSO Are Inapposite. ................................................................ 8

   G.   NSS Should Be Awarded Its Fees in Opposing AMTSO's Frivolous Fee Motion. ............. 9

III. CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Algasigma USA, Inc. v. First Databank, Inc.*,
  398 F.Supp.3d 578 (N.D. Cal. 2019) ................................................................................ 8

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*,
  448 F. Supp. 2d 1172 (C.D. Cal. 2006) ........................................................................ 3, 7

*City of Cotati v. Cashman*,
  29 Cal.4th 69 (2002) ........................................................................................................ 6

*FTC v. Superior Court Trial Lawyers Ass'n*,
  493 U.S. 411 (1990) ......................................................................................................... 9

*Gerbosi v. Gaims, Weil, West & Epstein, LLP*,
  193 Cal. App. 4th 435 (2011) .......................................................................................... 9

*GOLO, LLC, v. Higher Health Network, LLC*,
  No. 3-18-cv-2434-GPC-MSB, 2019 WL 446251 (N.D. Cal. August 2, 2019) .............. 8

*Manwin Licensing International S.A.R.L. v. ICM Registry, LLC*,
  No. CV 11-9514 PSG (JCGx), 2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) ............. 9

*Mindy's Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010) ........................................................................................ 6, 8

*Newport Harbor Ventures v. Morris Cerullo World Evangelism*,
  4 Cal. 5th 637 (2018) ............................................................................................... passim

*TYR Sport, Inc. v. Warnaco Swimwear Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) ........................................................................ 7, 8

*Wilcox v. Superior Court*,
  27 Cal. App. 4th 809 (1994) ............................................................................................ 9

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*,
  172 Cal. App. 4th 1561 (2009) ........................................................................................ 8

## I.   INTRODUCTION

Defendant Anti-Malware Testing Standards' motion for attorneys' fees ("AMTSO's Fee Motion") is objectively frivolous and should be denied for at least four reasons:

First, AMTSO's motion to strike was expressly contingent on this Court denying AMTSO's co-pending motion to dismiss, a contingency which never matured. AMTSO should not be permitted to seek fees based on a contingent motion whose contingency was never satisfied.

Second, the California Supreme Court's unanimous decision in *Newport Harbor Ventures v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637 (2018), bars the AMTSO SLAPP motion on NSS's FAC because it was not served "within 60 days of the service of the complaint" as required by Code of Civil Procedure Section 425.16.

Third, AMTSO's anti-SPLAPP Motion could not have advanced the purpose of the anti-SLAPP statute because, given AMTSO's assertion that the Cartwright Act claims completely overlapped the Sherman Act claims which were not (and could not have been) the subject of the anti-SLAPP motion, AMTSO's anti-SLAPP Motion could not possibly have "resolve[d] quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest."

Fourth, the anti-SLAPP statute does not apply because NSS's Cartwright Act claims do not arise from AMTSO's "rights of petition or free speech" and the thrust or gravamen of those claims are directed at unprotected activity.

Fifth, the FAC alleges commercial speech which is statutorily exempt from the anti-SLAPP statute.

Because AMTSO's Fee Motion is objectively frivolous, fees should be awarded to NSS for opposing it.

## II.   ARGUMENT

### A.   The AMTSO SLAPP Motion Was Expressly Made Contingent on an Event Which Never Happened.

AMTSO's motion to strike was expressly ***made contingent by AMTSO*** on this Court denying AMTSO's co-pending motion to dismiss. Dkt. 105 at 2:10-12 ("in the event that the Court

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

denies Defendants' Motion to Dismiss, AMTSO moves for an order striking the State Law Claims against AMTSO"). A contingent motion only would have become a motion upon the denial of Defendants' Joint Motion to Dismiss Amended Complaint (Dkt. No. 104). AMTSO should not be permitted to now seek fees based on a motion that AMTSO told NSS, and the Court, was contingent on an event which never occurred.[1]

While beside the point, AMTSO's "conditional" motion argument is illogical. If Defendants' Joint Motion to Dismiss were denied, the Court would have deemed NSS's claims colorable, which would mean they would survive a SLAPP motion too.

### B.     The AMTSO SLAPP Motion Is Barred by the California Supreme Court's *Newport Harbor Ventures* Decision.

As NSS's counsel informed AMTSO's counsel by email the same evening that AMTSO's Fee Motion was filed, the California Supreme Court's unanimous decision in *Newport Harbor Ventures v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637 (2018), bars the AMTSO SLAPP motion (and other SLAPP motions on amended complaints). *See* Declaration of Ian N. Feinberg in Support of NSS's Opposition to AMTSO's Fee Motion ("Feinberg Declaration"), **Exhibit A**. AMTSO's counsel responded the next day stating that *Newport Harbor Ventures* did not apply because new allegations were added to the First Amended Complaint ("FAC") which meant that the AMTSO SLAPP Motion and the AMTSO Fee Motion were permitted. *See* Feinberg Declaration, **Exhibit B**.

Contrary to AMTSO's position, the exception to the bar against SLAPP motions on amended complaints is limited to "permitting defendants to challenge only new causes of action" in an amended complaint. *Newport Harbor Ventures*, 4 Cal. 5th at 645. This is because "Anti-SLAPP Motions challenge particular causes of action, rather than individual allegations or theories supporting a cause of action." *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 448 F.

---

[1] AMTSO's SLAPP Motion was made contingent on the Court denying Defendants' Joint Motion to Dismiss, not on the Court dismissing the FAC without leave to amend. Had the Court granted Defendants' Joint Motion to Dismiss with leave to amend, and had NSS subsequently dismissed without prejudice without amending, AMTSO would be in precisely the same situation it is here.

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

Supp. 2d 1172, 1180 (C.D. Cal. 2006).  NSS did not assert any new state law cause of action in the FAC (or any new causes of action at all), only the two Cartwright Act clams it originally asserted. Thus, *Newport Harbor Ventures* barred AMTSO's anti-SLAPP motion and bars its fee motion.

Even if amended allegations in an original cause of action could support a SLAPP motion, which they cannot, the AMTSO SLAPP Motion nowhere identifies the new allegations in the FAC that would supposedly justify that motion.  Indeed, in its Motion to Dismiss the FAC, AMTSO told the Court that "the new pleading adds nothing in the way of material facts" and "adds nothing material."  *See* Dkt. 104 at 9:4 and 9:16.  It should not be heard in the AMTSO SLAPP Motion to contend that notwithstanding its assertion that the FAC added no "material facts" and "nothing material," any changes to the FAC were nevertheless so material that they support a SLAPP Motion.

In AMTSO's SLAPP Motion Section "A.  The State Law Claims arise from an act in furtherance of AMTSO's right of free speech," Dkt. 105 at 7, AMTSO asserts that "NSS's claims against AMTSO arise from the publication of the Standard," but does not point to anything in the FAC that differs materially from the allegations in the original complaint.  It begins by asserting that "NSS's claims against AMTSO arise from the publication of the Standard [and] the Standard is the gravamen of the State Law Claims against AMTSO."  Dkt. 105 at 7:10-12.  While the gravamen of the State Law Claims against AMTSO may be the Standard, the gravamen is most certainly not the publication of the Standard but rather its adoption and use to boycott testing labs that do not comply with it.

AMTSO goes on to assert that "AMTSO's Standard is published on its publicly available website, which [**sic**] considered a public forum."  Dkt. 105 at 7:17-18.  But the same publication of the Standard on the same website was alleged in the original complaint. The original complaint alleges that "[a] true and correct copy of AMTSO Testing standard . . . is publicly available at [AMTSO's website at a specified address]."  Dkt. 1 at 4:3-6.  It also alleges:

> According to the AMTSO website, in May 2018 AMTSO adopted the AMTSO Testing Standard (*see* **Exhibit A**) which it describes as a "standard" for "testing or rating of anti-malware products and solutions" which "specifies the information to communicate and how that information should be communicated between testers and

vendors with products or solutions that may be included in public and private tests." Moreover, it is the "mission" of AMTSO to establish specific rules for "testing behavior within the industry," a mission it fulfilled with the adoption of the AMTSO Testing Standard.

Complaint at ¶ 75, Dkt. 1 at 18:1-7. The original complaint also alleges:

> Also consistent with, and in furtherance of, the conspiracy, on or about September 5, 2018, Dennis Batchelder, the President of AMTSO, posted on the AMTSO website a blog which states in part: "We expect to see the first tests reaching full compliance with the AMTSO Standard in the next few weeks, ***and will continue to strongly encourage all testing organizations, and other parties engaging in anti-malware testing, to follow the AMTSO Standard wherever possible***. (Emphasis added.) A true and correct copy of the September 5, 2018 AMTSO blog post is attached hereto as **Exhibit E**.

Complaint at ¶ 84, Dkt. 1 at 20:18-24. *See* Dkt. 99, Order Granting Motion to Dismiss with Leave to Amend, at 3:26-28 (citing paragraph 84 of Complaint). Thus, the allegations that AMTSO claims support its anti-SLAPP Motion were in the original complaint.

AMTSO points to the allegation in paragraph 95 of the FAC that "the AMTSO Standard require[es] the EPP Vendor Conspirators to be given advance knowledge of the threats or 'exploits' against which their products will be tested." Dkt. 105 at 3:26-28. But paragraph 95 of the FAC makes essentially the identical allegations as paragraph 76 of the original complaint, only identifying "zero-day exploits" as an example of where advance knowledge of threats or exploits is particularly problematic. This can be seen from the text of the two paragraphs reproduced below. Paragraph 76 of the original complaint alleges:

> The purpose of the AMTSO Testing Standard is plain on its face—it is aimed at providing the EPP Vendor Conspirators the opportunity to know in advance exactly where, when and how their EPP products will be tested such that the EPP Vendor Conspirators can tailor their products in advance to the threats against which their products will be tested and score better on any public or private test. But knowing how one's product will be tested in advance defeats the entire purpose of independent third-party testing, no less than a student knowing the questions and answers before a test defeats the entire purpose of a school test. Indeed, obtaining such knowledge is usually called "cheating."

Complaint at ¶ 76, Dkt. 1 at 18:8-15.

> Paragraph 95 of the FAC alleges:

> One of the anti-competitive effects of the AMTSO Testing Standard is that by requiring the EPP Vendor Conspirators to be given advance knowledge of the threats

4

or "exploits" against which their products will be tested, it is impossible for their products to be tested against "zero-day exploits." According to defendant Symantec:

A zero-day exploit is an undisclosed application vulnerability that could be exploited to negatively affect the hardware, applications, data or network. The term **"zero day"** refers to the fact that the developers have "zero days" to fix a problem that has just been exposed and may have been already exploited. Hackers seize on that security vulnerability to launch a cyber attack on the same day a weakness is discovered. Basically, the vulnerability is exploited before a fix becomes available.

Zero-day exploits can take the form of viruses, polymorphic worms, Trojans, and various types of malware. All of these can be bought, sold, and traded. Hacker groups often post zero-day exploits as organizations under attack scramble to release patches against the security holes."
        https://www.symantec.com/connect/blogs/guide-zero-day-exploits (emphasis in original).

FAC at ¶ 95, Dkt. 100 at 24:3-14.

The remaining paragraphs of the FAC referred to in AMTSO's anti-SLAPP Motion (paragraphs 16, 95-96, 139) simply elaborate on "zero-day-exploits." Dkt. 105 at 4:2; FAC, Dkt 100, at 4:16-5:4; 24:15-18; 32:22-28. Indeed, paragraph 139 of the FAC, identified in AMTSO's anti-SLAPP Motion, Dkt. 105 at 4:2, is identical to paragraph 99 of the original complaint.

After the filing of AMTSO's Fee Motion, AMTSO counsel asserted that:

In this case, the amended complaint added new allegations that made the previously-pleaded causes of action subject to an anti-SLAPP motion. The anti-SLAPP statute applies to causes of action that arise from any act in furtherance of a person's right of petition or free speech. The original complaint alleged that AMTSO violated antitrust law by merely existing, and by "imposing restrictions" on testers in an unspecified manner. The original complaint did not allege that AMTSO participated in the alleged conspiracy by acting in furtherance of its right of free speech or petition-- as the Court found, "it is entirely unclear from the complaint how ASMTSO joined or participated in the alleged conspiracy." The amended complaint specified for the first time that AMTSO's act from which NSS's cause of action arose was its adoption of the testing standard. See, e.g, paragraph 20.

See **Exhibit B**.

But AMTSO's anti-SLAPP Motion does not even mention paragraph 20 of the FAC, demonstrating that AMTSO's argument was conjured up in an attempt to avoid the California

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

Supreme Court's *Newport Harbor Ventures* decision only after NSS's counsel brought it to AMTSO's attention.

**C.      The Purpose of the Anti-SLAPP Statute Could Not Have Been Advanced by AMTSO's Anti-SLAPP Motion.**

An anti-SLAPP motion is "intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." *Newport Harbor Ventures, supra*, 4 Cal. 4th at 639. But AMTSO's anti-SLAPP motion could not, even if granted, have advanced that purpose.

AMTSO did not (and could not) file an anti-SLAPP motion on NSS's federal claims. And AMTSO's sole basis for moving to dismiss NSS's Cartwright Act claims in the original complaint was that "NSS's state law claims against AMTSO should be dismissed for the same reasons" as NSS's federal claims should be dismissed. Dkt. 51 at 23:16. AMTSO thus treated NSS's Cartwright Act claims in the FAC as indistinguishable from the federal claims. Dkt. 104 at 10:1-2.

The dismissal of NSS's Cartwright claims could not have led to any quicker or less expensive resolution of NSS's antitrust lawsuit against AMTSO given AMTSO's assertion of a total overlap between NSS's Cartwright Act claims and its federal claims. AMTSO's anti-SLAPP Motion could not have served the purpose behind the anti-SPLAPP statute and should never have been filed.

**D.      The anti-SLAPP Statute Does Not Apply Because NSS's Cartwright Act Claim Do Not Arise From AMTSO's "rights of petition or free speech."**

A defendant making an anti-SLAPP motion "must make a prima facie showing that the plaintiff's suit 'arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). AMTSO fails to do so because "[i]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) (emphasis in original; citations omitted).

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

Even if the FAC adds allegations that could be construed as directed at protected activity, which it did not, the thrust or gravamen of the Cartwright Act claims are directed at unprotected activity.

> Whether the anti-SLAPP statute strikes the claim is determined by the claim's 'principal thrust' or 'gravamen,' and 'when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on unprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.

*Bulletin Displays, LLC*, 448 F. Supp. 2d at 1187. Bulletin Displays rejected an anti-SLAPP motion because the reference to a clearly protected CEQUA lawsuit "appears to be a relatively minor part of the larger pattern of conduct." *Id.* at 1188. That the thrust or gravamen of NSS's Cartwright Act claims are not directed to protected activity can be seen from the very limited changes from the original complaint, which AMTSO did not challenge under the anti-SLAPP statute, to the FAC. Indeed, as noted above, AMTSO told the Court that "the new pleading adds nothing in the way of material facts," Dkt. 104 at 9:4 and "adds nothing material." Dkt. 104 at 9:16.

**E.      NSS's FAC Alleges Commercial Speech Statutorily Exempt from the anti-SLAPP Statute**

In *TYR Sport, Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1141 (C.D. Cal. 2009), the facts of which are remarkably similar to those here, the Court held that "TYR's allegations against USA Swimming primarily involve a commercial dispute, for which the gravamen is that USA Swimming and Schubert [Speedo's spokesman] combined to provide Speedo with a competitive advantage over its competitors in an unreasonable restraint of trade." *Id.* at 1143. *TYR Sport* held that the Cartwright Act claim challenged under the anti-SLAPP statute was exempt "commercial speech" under Cal. Civ. Proc. Code § 425.17(c), *id.*, despite the fact that the challenging party, USA Swimming, like AMTSO, was a non-profit. This is because "the legislative history of the commercial speech exemption to the anti-SLAPP coverage confirms the Legislature's intent to except from anti-SLAPP coverage disputes that are purely commercial." *Id.* at 1142 (citation omitted).

NSS alleges a conspiracy whereby the EPP Vendor Conspirators conspired with AMTSO to disadvantage competitors of the EPP Vendor Conspirators.  It is precisely the type of commercial speech that *TYR Sport* found to be outside the coverage of the anti-SLAPP statute.

Moreover, the anti-SLAPP statute cannot have been violated here because "[a]ll of the allegedly wrongful conduct and speech that plaintiffs attribute to defendants was committed in a business capacity." *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1569 (2009).

**F.      The Cases Cited by AMTSO Are Inapposite.**

AMTSO cites *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) for the proposition that "[b]ut for the Standard, NSS 'would have no reason to sue' AMTSO."  Dkt. 105 at 7:10-13.  But *Mindy's Cosmetics* was a lawsuit solely based on the filing of a trademark application with the United States Patent & Trademark Office ("USPTO"), a petitioning activity squarely within the anti-SLAPP statute.  *Id.* at 597.  And there it was true that but for the protected activity, the plaintiff would have had no reason to sue.  But here it is not the publication of the Standard but its adoption which is the thrust or gravamen for NSS's Clayton Act claim.  NSS's claim would have been the same whether the Standard was published on AMTSO's website or communicated among AMTSO's members in secret.

AMTSO cites *GOLO, LLC, v. Higher Health Network, LLC*, No. 3-18-cv-2434-GPC-MSB, 2019 WL 446251, at *14 (N.D. Cal. August 2, 2019) for the proposition that a website is a public forum, Dkt. 105 at 7:18-22, but ignores the Court's holding that the challenged speech was not subject to the anti-SLAPP statute because it did not arise "from an act in furtherance of Defendants' rights of petition or free speech." *Id.*  Here NSS's claims arise from the adoption of the Standard and the EPP Vendor Conspirators' agreement not to allow their products to be tested by testing companies who do not adhere to the standard.  Publication on AMTSO's website is not the gravamen or thrust of NSS's claims.

AMTSO cites *Algasigma USA, Inc. v. First Databank, Inc.*, 398 F.Supp.3d 578, 585 (N.D. Cal. 2019) for when speech is covered by the anti-SLAPP statute.  Dkt. 105 at 7:23-28.  But the

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

subject of NSS's Cartwright Act claims are not the publication (or other speech) about the Standard but rather its adoption and use to boycott testing labs who do not comply with it.

AMTSO cites *Manwin Licensing International S.A.R.L. v. ICM Registry, LLC*, No. CV 11-9514 PSG (JCGx), 2013 WL 12123772 (C.D. Cal. Feb. 26, 2013), for the proposition that boycotts are protected activity under the anti-SLAPP statute even if they are alleged to violate the antitrust laws. Dkt. 105 at 8:14-19. But *Manwin* does not explain what the nature of the alleged boycott at issue was there, and the case it relies on for the proposition that claims challenging boycotts can violate the anti-SLAPP statute, *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 821 (1994), was decided before the 2010 amendment to the anti-SLAPP statute exempting commercial speech, as can be seem from its statement that "[i]t did not matter that the speech at issue could be characterized as commercial speech," *id.* at 811.

AMTSO's citation to *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 425-26 (1990), Dkt. 105 at 8:19-22, supports NSS's position, not AMTSO's. NSS does not challenge "the association's efforts to publicize the boycott, to explain the merits of its cause," *id*. at 426, but rather the adoption of the Standard and its use to boycott NSS and other non-compliant testing labs.

**G.      NSS Should Be Awarded Its Fees in Opposing AMTSO's Frivolous Fee Motion.**

> The anti-SLAPP statute requires the trial court to award reasonable attorneys' fees to a prevailing plaintiff pursuant to section 128.5 when the court determines that a defendant's anti-SLAPP motion was "frivolous or ... solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1) ["shall" award].) Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit

*Gerbosi v. Gaims, Weil, West & Epstein, LLP,* 193 Cal. App. 4th 435, 450 (2011) (citation omitted). Here, no reasonable attorney would bring AMTSO's Fee Motion at least because (1) it was expressly conditioned on an event that never occurred; (2) it was barred by the California Supreme Court's *Newport Harbor Ventures* decision which expressly prohibits anti-SLAPP motions on causes of action in amended complaints that were in the original complaint; (3) it could not possibly have advanced the purpose of the anti-SLAPP statute because the federal Sherman Act claims which AMTSO asserted were identical to the Cartwright Act claims were not the subject of the anti-SLAPP motion; (4) the thrust or gravamen of the Cartwright Act claims was on

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF

unprotected conduct; and (5) the FAC alleges exempt commercial speech. NSS should be awarded its attorneys' fees as set forth in paragraph 4 of the Feinberg Declaration.

## III.     CONCLUSION

For the foregoing reasons, AMTSO's Motion for Attorneys' Fees should be denied in its entirety and NSS should be awarded its fees.

December 31, 2019                                        FEINBERG DAY KRAMER ALBERTI LIM
                                                               TONKOVICH & BELLOLI LLP

                                                               /s/ *Ian N. Feinberg*
                                                               Ian N. Feinberg

                                                               Attorneys for Plaintiff
                                                               NSS Labs, Inc.

OPPOSITION TO AMTSO'S MOTION FOR ATTORNEYS' FEES - 5:18-CV-05711-BLF